- HOGG *versus* DORRAH.

To say of a member of the Legislature, in reference to the future discharge of his public functions, that " he is a corrupt old tory," held, not to be actionable *per se*.

Words, charged as slanderous, are to be construed neither in their most harsh, nor innocent sense; but, in their plain and common acceptation, and according to their popular use, and obvious import.

The principle is well settled, that words may be actionable, if uttered against officers, or others in public stations of trust or profit, which would not be so, if spoken against common individuals.

But, words to be actionable, if uttered against official persons, must relate to past conduct, implying criminality or moral turpitude, and not to the prospect of future misconduct in office.

*Semble*, that if there be any exception to this rule, it is in the case of clergymen.

This was an action of slander, instituted in the Circuit Court of Tuskaloosa, by the plaintiff, Hogg. The declaration charged the defendant, in three counts, with having uttered of him, the plaintiff, (he being a member of the Legislature, elect from the county of Tuskaloosa,) these following defamatory words, to wit :

First. " He is a corrupt old tory."

Second. " He is corrupt."

Third. " Keep a strict watch on him, he is a corrupt old tory."

Each count in the declaration, contained *inuendoes*, that the words were spoken by the defendant, in reference to the station of the plaintiff, then held by him, and that they related to the discharge of his duties as a member of the Legislature.

To the several counts in the plaintiff's declaration, the defendant filed a demurrer, which the Circuit Court sustained, and rendered judgment for the defendant.

To reverse this judgment, the plaintiff brought the case into this Court by writ of error,

STEWART, for Plaintiff.—I do not rely, of course, on any thing like the principles of the law of *scandalum magnatum*. A man's office, in this country, does not elevate him above his fellow-citizens, so as to make an offence against him greater than an offence against others, merely on the ground of his exalted character: but a man in office is liable to peculiar injuries, to which others are not liable; and when he is thus injured, he has a right to redress. It is slander to charge a man in office with principles inconsistent with his office.—2 *Esp. N. P.* 496. This is the class of-slanderous words complained of in the declaration. The office of legislator, or member of the Legislature of Alabama, is not merely an office of honor, but an office of profit also: and if injured in that office, he may sustain loss: if such a one be corrupt, he is liable to be expelled. The offence charged has a technical meaning, when applied to a man in office. If the charge be believed, it may not only subject him to pecuniary loss—not only make him liable to expulsion—not only prevent his promotion, but it will affect his moral standing, and dishonor him.

These words also come under the rule of words, spoken against a man in some trade or profession. If the charge be credited, that a man in office is corrupt, he will at once, or ought to be, excluded from office.

In offices of profit, words which import want of ability, are, by all the authorities, actionable. Indeed, either kind of imputation, that is against the ability or integrity, is by the better opinion, actionable, whether the office be merely confidential or lucrative.—*Starkie on Slander,* 100, *et seq.*

Words calculated to injure a man in his office, it is laid down, though not spoken in reference to the

office, are actionable : as to say of a Bishop, " he is a wicked man," or to call an attorney " a cozening knave." Words are to be considered according to the condition of him of whom they are spoken ; for his liability to be injured depends on that condition. These words are clearly actionable. The authorities have gone much farther.

The term " *tory,*" in this country, is equivalent to *traitor.* A tory is an enemy to his country. It is not understood in this country, as it is in England, where it means an adherent to a particular political party, who are friends of monarchy and the church. Never was it used in the sense in which it has been used in very late times, in this country, since the commencement of this suit. It was meant as it is generally under- stood among the people, that is to say a traitor, an enemy to his country.

STEWART cited *Mass. Rep.* 248—7 *Johns. Rep* 359. 5 *Binney's Rep.* 221—1 *ibid,* 184—1 *Johns. Cas.* 129. 7 *Johnson,* 264.

ELLIS, *contra.*—Much of the law referred to by counsel, is not applicable to the present case. It is admitted that these words would not be actionable, if spoken of a private individual : then, the question arises, whether they can be made actionable by the office of a legislator. The general rule is, that if the party would be liable to be criminally punished, for the offence, if established, then the words are action- able in themselves.—5 *Johnson's Reports,* 191—*Mi- nor's Reports,* 94, 140.

I assume the position, that Hogg did not hold an office, within the meaning of the Constitution. The declaration here, shows that the plaintiff only claims for damages on account of his holding the office of a member of the Legislature. The two first counts

make the charge as an injury done to him, in office: the last, does not aver the office directly; but as the words are not actionable when spoken against a private individual, the count is demurrable for that reason. In the first two counts, the plaintiff is said to be subjected to all the pains and penalties to which those are subject, who are guilty of corruption in office. What are these? Can a member of the Legislature be impeached? No. Is he indictable for a misdemeanor, for corruption in office? I know no authority for it. If the danger was expulsion, it should have been stated. If it was deprivation of promotion, that should have been stated.

But, members of the Legislature are not officers. The Constitution says, they shall "*serve*," &c., not, shall *hold the office.* Of certain persons, it says, they shall not have a seat in either House of the General Assembly, *or be eligible to any office of trust or profit* : why the distinction, if members of the Legislature hold an office of trust or profit?—3d Art. 2d *sec. Constitution of Alabama—same Art.* 24, 25, and 27*th sections.*

When the Constitution comes to speak of the Executive Department, of the Governor, Secretary of State, Sheriff, &c. the word *office* is employed—4*th Article of the Constitution,* 14*th section.* So also, of the Judicial department—the *office* of Justice of the Peace, the Judge's *office,* the *office* of Attorney General, &c.—*Section* 18.

Officers, in the constitutional sense, would be liable to impeachment, also to indictment for corruption in office: words like these would, perhaps, be actionable against them for this reason, but not against members of the Legislature, who are not so liable.

Much of the doctrine of the English Law on this subject, is founded on the statutes giving damages for

*scandalum magnatum ;* but we have no such law. The two rules laid down in the case of *Onslow* vs. *Horn,* (3 *Wilson* 177,) are, 1st. Slander must be where the words impute a crime. 2d. Where the words are against a person holding an office of profit, and calculated to injure him therein——or the same as to a profession.

It is not fair to reason by analogy, from members of Parliament to our members of the Legislature. Liberty of speech is guaranteed in this country. Members of Parliament hold their place for seven years : here, it is a temporary trust——held only for one year. It is held, for instance, that to say of a member of Parliament, "He is a papist," is actionable. This would surely not be law here, in reference to our Legislature.

But, I hold that under our form of government, no action will lie for words like these. No adjudged case can be found where an action has been maintained for a charge of corruption against a member of the Legislature. Nor do I know of any case in England since that of *Onslow* vs. *Horn,* and there the judgment was for the defendant. This action, I insist, cannot be supported.

By Mr. Chief-Justice SAFFOLD :

Hogg instituted an action of Slander, in the Circuit Court of Tuskaloosa county, against the defendant, Dorrah.

The declaration contains three counts.

1. The first recites the plaintiff having been duly elected a representative of the county; had taken upon himself the duties of his office ; had taken the oath prescribed ; had been admitted to his seat ; and was, at the time, in the discharge of the duties of said office, when the defendant well knowing

the premises, and intending, &c. to cause it to be believed, that the plaintiff was guilty of corruption in office, and to subject him to the punishment provided by law for said offence, in a discourse held with one Cunningham, in the hearing of divers others, and in relation to the office and trust, which the plaintiff then held as aforesaid, falsely, slanderously, &c. uttered, and proclaimed of him, the plaintiff, as follows—that " he is a corrupt old tory;" (meaning thereby, that he, the plaintiff, was guilty of corruption in the discharge of his said public function and trust.)

2. In the second count, that " he is corrupt."

3. In the third count, that the defendant said to Cunningham, who was also a member of the Legislature, in reference to the plaintiff, and his said public function, " keep a strict watch on him, he is a corrupt old tory;" with *innuendo* to the second and third counts, similar to that in the first.

To each of the counts in the declaration, the defendant demurred. The Circuit Court sustained the demurrer, and rendered judgment for the defendant, for the costs.

This judgment on demurrer, is the cause assigned for error.

Thus, the question is presented, whether the words charged, under the circumstances, and in the manner of the imputation, are actionable in themselves, or could only be rendered so by a *per quod* averment. As no special damages are alleged—unless the words are actionable in themselves, the demurrer was properly sustained.

What is the nature of the imputation against the plaintiff, alleged in the declaration? It is necessary to determine the true import of the words complained of, in order to bring them to the test of other cases. The *innuendo*, it must be recollected, cannot alter, va-

28

ry, or extend, the meaning of the words uttered. It can only furnish a technical definition or explanation of an offence imputed by the words actually spoken. The position is equally true, that in actions of this kind, according to the improved doctrine of the law, the words charged as slanderous, are not to be construed either in their most harsh and offensive, nor in their most mild, and innocent, sense, as, at different periods in the history of jurisprudence, has been holden; but are to be understood by courts and juries, as by the rest of society, in their plain and common acceptation; in other words, according to their popular use, and obvious import.

Allowing to the plaintiff all the benefit that can be derived from the fact, of his having been a member of the Legislature at the time, and that the words were spoken of him in reference to the discharge of his public functions, as such, what is the offence imputed to him? In the first and third counts, it is no other than that he was a *tory* of an obnoxious description. It is not even supposed, by the argument of counsel, that the words were intended to impute that kind of *toryism*, which has long distinguished one of the political parties in England, or that which was applicable to one portion of the American community during our revolutionary struggle, and for some time afterwards. Nor is it contended, if such were the intention, that the words, (if ever so,) would be actionable at the present day. But, it is insisted, that by a rational intendment, the meaning must have been, that the plaintiff was a traitor or some kind of enemy to his country. According to my view, this would be the most rigid and offensive acceptation that the words could possibly bear; and that we have no more authority thus to construe them, than in the very mild sense suggested by the defendant's coun-

sel—that it may only have been intended to impute to the plaintiff the advocacy of a particular candidate for the Presidency, to whom the defendant was opposed. But, I must concede, that neither appears to me to be the natural and common acceptation of the term : also, that when the charge was made, or at the present day, in this State, and after the various uses that have been made of the word, there is difficulty in ascribing to it any definite meaning. I think, however, it may be assumed, that if any thing more than general scurrility was meant, the epithet was intended to impute some *political creed or heresy*, which the plaintiff considered obnoxious ; and that the other qualities imputed, by the adjective 'corrupt,' represented the plaintiff as *one possessing a heart of general depravity ;* and that the accompanying request, that he should be watched, implied an opinion that he was capable of disingenuousness, or artifice, to effect his sinister purposes. The joint application of the epithets *corrupt* and *tory*, has a tendency rather to qualify and limit, than to extend the former, by confining it to *political* feelings or sentiments.

The second count, however, charges the imputation of corruption in the plaintiff, without any special application ; the effect of which, I would understand to be, that the plaintiff possessed a depraved heart, rendering him capable of vicious or corrupt acts generally.

Then, the question recurs, whether words, imputing to the plaintiff, while a member of the Legislature, and in reference to the future discharge of his public functions, the character of vice or depravity ; or of holding, undefined, obnoxious political tenets, *are in themselves actionable.*

It is considered material, that the words charged, have no special reference to any *particular vote, or*

*other act done;* nor even to the plaintiff's *past conduct as a member*—that the allusion is to his corrupt and tory character in *anticipation* of his improper conduct. The principle is well settled, that various charges, when made against officers, or others, in public stations of trust or profit, may be actionable, which would not be, if uttered against common individuals. The reason is, that persons in office, or such other stations, may loose their employment, and the profit or confidence committed therewith ; or may be subject to prosecution and punishment for malfeasance, or other offences ; yet there are some general principles applicable to all actions of slander, to which reference must be had, in determining the effect of these words.

It is said, in an authority,[a] read in argument by the plaintiff's counsel, "that the words must charge *a fact to have been committed ; for to charge a man with bad or evil intentions, is not sufficient :*" as, where the defendant said of the plaintiff, " he is a brawler and quarreller, and gave his champion counsel to kill me, and then fly the country :" these words were adjudged not to be actionable ; for they charged no fact *committed,* and the *purposes* or *intentions* of a man, without action, are not punishable at law. So, where the words were, " He is a troublesome fellow, and I doubt not to see him indicted at the next assizes, for *sheep stealing ;*" these words were adjudged not to be actionable, as not charging the party with any fact *committed.*

It is also said, by the same authority,[b] in reference to words constituting *scandalum magnatum,* that imputations against persons in office, dignity, trust, and profit, may be actionable, which would not be held so, in case of a common person : as where it was said of the *Marquis of Dorchester,* " My Lord is no more to

[a] 2 Esp. Ni. Pr. 496, '7.

[b] 2 Esp. Ni. Pr. 499.

to be valued than the dog which lies there;" this was considered actionable. Other authorities to be noticed, will perhaps show, that *Dorchester's* case can not be regarded as law, unless under circumstances different from those presented; and will further illustrate the accuracy of another principle, given in connection with the same, that words, charging *bad intentions* merely, are actionable in the case of *public persons* or *magistrates.* The further remarks of the same author, appear scarcely reconcileable with the above: "That where the words do not charge the person in such *trust* or *office*, with any breach of his duty, or oath; with any crime or misdemeanor, whereby he has suffered any temporal loss in fortune, office, or in any other way whatsoever, but are spoken *as matter of opinion* as to the person's conduct, such words are not actionable."

I regard the case of *Onslow* vs. *Horn*,[a] as direct authority in this case. For the present purpose, it is sufficient to notice the concluding remarks of the *Chief Justice,* in delivering the opinion of the Court. He says, " the words do not relate to *Mr. Onslow's past conduct in Parliament:* they do not charge him with any breach of his duty, his oath, or any crime or misdemeanor, whereby he has suffered any temporal loss, in fortune, office, or in any way whatever. There is no occasion to say any thing concerning any future presumptive contingent damages, which Mr. Onslow may possibly sustain at some future time, (no body knows when) by reason of Mr. Horne's reflection upon him. I know of no case, whereon an action for words was grounded upon eventual damages, which may possibly happen to a man in a future situation, notwithstanding what the Chief Justice throws out in 2 *Vent.* 266, where he is made to say, ' that where a man had been in an office of trust, to

[a] 3 Wilson 177.

say, he behaved himself *corruptly* in it, as it imported great scandal, so it might prevent his coming into *that* or the like office again, and therefore, was actionable.' I think the Chief Justice went too far." Such is the language of the Court, in *Onslow's* case. The Chief Justice there, also said, he thought his brother *Leigh* went a little too far, when he said the words imported that Mr. Onslow would betray his trust : " We think they mean no more, than Mr. Horne *was of o-pinion, Mr. Onslow would break his word*; but to say, *he has broke his word,* is not actionable—*a fortiori,*. these words are not actionable." The particular words uttered against Onslow, are immaterial to our purpose. The principle of the decision,is, that the words, to be actionable, must relate to the plaintiff's *past* conduct in his office, or public duty ; must charge an. actual breach of duty, or of oath, or the commission of some crime or misdemeanor ; that an action for words, is not sustainable for eventual or contingent damages, which may possibly happen to a man in a future situation ; nor is the expression of an opinion, respecting another's *inclinations* or *intentions,* a ground of action.

The principle mainly relied on, in support of this action, is, that the words were spoken of the plaintiff, in reference to his motives and conduct *in office.* The injury is so charged in the declaration ; but, as before mentioned, without any averment of special damages, or of any *colloquium,* applying the imputation to any vote given, or other act committed, in the discharge of the public trust ; but, with general reference to his corrupt disposition, and obnoxious character, while a member, and employed as such. Except in relation to the plaintiff's alleged *toryism,* which I have attempted to shew is not *actionable,* what distinction can be drawn between the import of this

charge, and those of *liar, scoundrel, villain, &c.*—
Charges of the latter description, are generally con-
sidered as indicating rather the angry, reckless tem-
per of the speaker, than the turpitude of him of whom
they are spoken. It is well settled, that such impu-
tations, when made in reference to common persons,
are not actionable ; nor has any case been found, of
good authority, in which words of similar import,
have been so held, when spoken of one in official sta-
tion, or any honorary employment or trust. It is
not believed that a member of the Legislature could
be subjected to conviction on impeachment for any
cause, of the nature of that imputed to the plaintiff
in this action, even if he could for any cause what-
ever, which is not admitted. It is true, a member of
the Legislature is subject to expulsion, by the body it-
self ; but it cannot, for a moment, be apprehended,
that the charge imputed to this plaintiff, if admitted
to be true, would authorise his expulsion. An insu-
perable objection to this course, would be, that no
crime or misdemeanor , or any particular act of mo-
ral turpitude, was charged ; nor any particular allu-
sion made to the plaintiff's *past* deportment as a mem-
ber ; that an apprehension or opinion only was ex-
pressed, from his disposition and character, that he
would act improperly.

In *Starkie on Slander,* (110) it is said, " that to
impute want of integrity to any person, who holds an
office of trust or profit, is actionable." It is impossi-
ble to determine the force and extent of such general
propositions, without particular reference to the proofs
and illustrations given to sustain them ; this is also
necessary to test their authority. Of the cases given
in support of the above proposition, one was, that it
had been said of a Judge, that " *his sentence had been
corruptly given :*" Another, where it was said of **a**

Justice of the Peace, " I have often been with him for justice, but could never get any thing at his hands but injustice:" And another, where the words were, " He covereth and hideth felonies, and is not worthy to be a Justice of the Peace."

The distinction between each of these cases, and the one before us, is most obvious.   In all the cases cited, the words used, clearly imputed corruption or turpitude, in reference to particular official acts previously committed.

The same writer, in continuation, lays down another proposition in still broader terms ; which is, that " where a person holds an office or situation, in which great trust and confidence must be reposed in him, words impeaching his integrity generally, and without express reference to his office, are actionable ; since they must necessarsly attach to him in his particular character, and virtually represent him as unfit to hold that office or situation."   One of the examples given to sustain this position, is a case in which it had been said of a Bishop, " He is a wicked man."   This was held to be actionable ; and appears to be the strongest case referred to, of which there were many.   All the rest, according to their natural import, or the construction placed upon them by the courts or juries, had reference to some particular misconduct in office, or to some breach, or violation of, or incapacity for, professional duty, and pointed to acts already done—not, as in this case, to a disposition for future mischief.

The case of the Bishop, appears to rest on a principle peculiarly applicable to clergymen—that whatever tends to destroy public confidence in their moral virtue, and christian purity, must deprive them of that respect and veneration, which is indispensable to the success of their profession.   On this principle, it

is held, in the United States, as well as in England, that to charge a minister with *drunkenness,* is actionable without laying a *colloquium* of his office or profession, and without proof of special damages—(*McMillan* vs. *Birch*[a]—*Shaddock* v. *Briggs.*[b]) In the case last referred to, Chief Justice *Parker* concludes the opinion of that Court, thus : "a minister of the Gospel is separated from the world by his public ordination, and carries with him constantly, whether in or out of the pulpit, superior obligations to exhibit, in his whole deportment, the purity of that religion, which he professes to teach.   He is as much in office, when retired to the bosom of his family, as when employed in public duties ; and his example in the practice of all moral virtues, and particularly of temperance, is not the least of the duties incurred by his profession."

[a]1 Binney,178.
[b]13 Mass. Rep. 248.

But the law is conceived to be different in respect to other persons ; even as to those in *offices of trust and profit,* or other public stations.   It appears, from the references already made, that there is at least, a shade of distinction : that in the latter cases, the imputation may point to some particular misconduct previously acted, in violation of official or professional duty.   The principle adopted in *Brooker* vs. *Coffin,*[c] is not strictly applicable to the case of officers, so as to require to be actionable, a charge, which, if true, will subject the party to an indictment for a crime involving moral turpitude, or subject him to an infamous punishment : yet, by analogy, it is entitled to its influence in requiring that the actionable words shall point to the particular misconduct, imputed as criminal or vicious.

[c]5 Johns. Rep. 188.

The case of *Oakley* vs. *Farrington,*[d] is more in point.   The plaintiff complained as a Justice of the Peace, and charged the slanderous words to have

[d]1 Johns. Cas. 129.

been spoken of him in relation to his office. The words were, " Squire Oakley is a damned rogue." It did not appear from any circumstance, that the words were spoken of the plaintiff in his official capacity. The Court ruled, that the words spoken of a common person, would not be actionable ; and although they were spoken of a magistrate, as they had no relation to his official character or conduct, they were no more actionable, than if he had not been in office.

*7 Johns. Rep. 359.* The case of *Lindsey* vs. *Smith*,[a] further illustrates the true principle. In that case also, the plaintiff was a Justice of the Peace, and declared for an injury as such, in reference to a trial had before him between the defendant, and one Abner Wood. He alleged, in substance, that the defendant said of him, " he had been *feed by Wood,* and that he, the defendant could do nothing, when the magistrate was in that way against him." A verdict having been obtained for the plaintiff, the defendant moved in arrest of judgment, on the ground, mainly, that the *colloquium* did not state that the words were spoken concerning the *cause,* and the *plaintiff's conduct* in relation to it. The Court remarked, that the slanderous intent and *application* of the words had been established by the verdict ; that the *innuendo* could not supply the place of the *colloquium,* but that there was the competent *colloquium* to give *point* and application to the words if found, as the jury must have found them to have been spoken, with a scandalous and malicious intent.

These two latter cases fully sustain the principle of those previously referred to, that actionable words, even in reference to officers, and all public functionaries, (perhaps clergymen excepted,) must point to previous official misconduct, implying criminality or moral turpitude. This restriction must be observed, or

a boundless field of litigation would open before us ; and thus far only, consistent with the genius of our government, can the licentious use of words, be checked and punished.

The province of the jury, in deciding, whether or not, there is cause of action, is only to determine the effect of the evidence, and the common acceptation of the words charged, when, from the form of the expression, their import is equivocal. In other respects, it is a question of law, whether the imputation be actionable.

From this view of the case, we are of opinion, the judgment below, must be affirmed.