# RAWLS *vs.* DOE ex. dem. KENNEDY.

1. The proviso to the first section of the act of 1843, (Clay's Digest 329 § 92,) applies only to that section, and does not extend to the whole act.

2. The act of 1802, (Clay's Digest 327 § 83,) which bars rights of entry after the lapse of twenty years, is not repealed by the act of 1843, (Ib. 329 § 93,) which limits all actions for the recovery of lands to ten years after the accrual of the cause of action; possessions commencing under the old law are governed by the act which first effects a bar in their favor.

3. In ejectment, where separate demises are laid from several tenants in common or co-parceners, if the statute of limitations has effected a bar against one of the lessors, a recovery may be had on the demises from the others.

Error to the Circuit Court of Mobile.

Tried before the Hon. John A. Cuthbert.

Ejectment for a lot of land in the city of Mobile. The declaration laid joint and several demises from Oscar Kennedy, Charles S. Shrieve and Mary, his wife, and Ella Walker, said Oscar, Mary and Ella being the heirs at law of Joseph Kennedy. The defendant having entered into the consent rule, and admitted possession of a portion of the land sued for, the counsel of the respective parties agreed on the following case :

"1. That on the eighteenth day of January, 1817, Wm. E. Kennedy was the legal holder of a Spanish claim for lands in Mobile originally granted to Thomas Price, which was confirmed in 1829, to Joshua Kennedy, as his assignee. The claim, with all the evidence appertaining to it, is recorded in the records of this Circuit Court, and of the Supreme Court of this State, in the cases reported in 7 Ala. R. 882, 11 Ala. R., and 2 Ala. R. 574 ; and reference is made to this evidence, and to the third and fifth volumes of American State Papers (Public Lands) for the same.

2. That Wm. E. Kennedy, on the eighteenth day of January aforesaid, executed a deed of bargain and sale, by which, for one dollar, he granted, bargained and sold to Joseph P. Kennedy the undivided half of ten acres of land, situated about one mile and a half from the centre of the town of Mobile, at a place known and designated as the "Spring," to include said Spring.

Rawls v. Doe ex dem. Kennedy.

It was understood that the said Joseph was to improve said lands in a short time, for the common benefit. This deed contains a covenant of warranty, and was duly recorded in the County of Mobile.

3. That Joseph P. Kennedy entered upon said lands, but made no improvements of any consequence before his death.

4. That in 1824 Joseph P. Kennedy died, leaving three children, Oscar P. Kennedy, Glovina Kennedy, who afterwards married Robert L. Walker, and died in 1842, leaving Ella Walker her heir at law, and Mary Kennedy, wife of Charles S. Shrieve; and that these, the heirs of Joseph P., are the lessors of the plaintiff.

5. That in December, 1824, Joshua Kennedy purchased from William E. Kennedy his entire interest in the Price claim, with notice of this deed, and prosecuted the claim to its confirmation by Congress, by the act of March 2, 1829.—2 Clark's Land Laws, p. 239.

6. That Joshua Kennedy, immediately after his purchase, claimed and possessed the land as his own, and in the year 1833 he conveyed it to William F. Cleaveland and others, by deed with warranty, who entered into possession immediately.

7. That the possession of said Cleaveland was adverse and continued; he divided this land into lots, and sold them among a large number of persons, who claim the fee simple, and have continuously occupied the same.

8. That John F. Rawls owns and occupies, at the date of the service of the ejectment, one lot in the Price claim aforesaid, described in his consent rule, in that portion embraced in the deed of William E. Kennedy to Joseph P. Kennedy aforesaid, and that his title to the same was regularly derived from Joshua Kennedy and William F. Cleaveland, under their conveyances.

It is further agreed that Glovina Kennedy and Mrs. Shrieve were minors at the time of their father's death, and became of age, the one in 1838, and the other in 1840.

The parties hereto submit their rights to a recovery, either for the whole or a part of the lot above mentioned, upon the facts above stated, and reserve the right to appeal to the Supreme Court," &c.

Upon the case thus made, the court rendered judgment for

the plaintiff, for the lot described in the consent rule, and this judgment is here assigned for error.

The action was commenced in April, 1852.

STEWART, CHANDLER and HAMILTON, for plaintiff in error :

1.  The act of 1843 contains two sections.   The first section refers to equities of redemption, and attached to it is a proviso.   The second section declares the general rule ; it provides a bar of ten years after the cause of action accrues.— Without the addition of the general proviso attached to the first section, it is admitted that, under the general rule applied by the courts to regulate the operation of statutes, the enactment contained in the second section would be held to have effect only as to the future after the passage of the act.—7 Johns. R. 477 ; 8 Wend. 661 ; 10 ib. 363 ; 2 Greene 181 ; 1 ib. 338 ; Wilkins. on Limitations 140.

In general, the operation of a new law is confined to the future, but this is not always the case ; it is competent for the legislature to provide that a new law, operating upon a remedy, may have a retrospective operation ; and where this intention appears, effect will be given to it, but not so as to defeat vested rights.—1 Ala. R. 661 ; 13 Peters' R. 45, 64 ; 2 Louis. Ann. R. 611 ; 3 ib. 526 ; 3 McLean's R. 568 ; 2 Gall. 103.   This principle is expressly recognized in Henry v. Thorpe, 14 Ala. R. 103.

We contend, that the legislature has made such provision in the act of 1843.   That act is either prospective only, or it is both prospective and retrospective.   The body of the first section clearly looks to a retrospective operation, while the language of the second section may very properly be construed to operate in either way ; but, without more, under the general rule, it would be held to a prospective operation.   If the proviso found in the first section be applied to both sections, there can be no doubt of the meaning the enactment speaks.   It was prepared in the very spirit of the language used by the Supreme Court in 13 Peters' R. 64.   It declares the operation of the act to be partially retrospective, and permits any part of the ten years, not exceeding five, to be counted before the date of the act.   No possession existing at the date of the act should be defended by that act, against a claim made within five years after its pass-

age. By the use of the proviso, the language and operation of the two sections are made harmonious. Does this proviso apply to the whole act? The proviso itself says that it does. "Where I find the words of a statute perfectly clear, I shall adhere to the words," says Lord Denman, in 4 Nev. & M. 426. Where a well known word is used, the well known meaning shall be applied.—1 Kent's Com. (7 Ed.) 511; 20 Wend. 561; 13 M. & W. 511; 9 Iredell 149, 150. The proviso says, it governs the whole " act," that is, the " act to amend the law in relation to limitations." Certainly, with this language, nothing can justify the court in deciding that " act " means " section."

2. The claim of Oscar P. Kennedy was barred by the operation of the act of 1802. The acts of 1802 and 1843 both operate, and both may stand together.; and if either of them, by its terms, bars a claim, that bar is perfect. This is undeniable, if the act of 1802 is unrepealed; and it is nowhere expressly repealed. The act of 1843 does not expressly repeal it; it is an act " to amend," not an act to repeal; the intention to amend excludes, ex vi termini, the intention to repeal, unless the two acts conflict with each other; it does not operate a general repeal, though it may work a partial and particular repeal in specific points of conflict. Repeal by implication is not favored by the law. In the absence of express words of repeal, the presumption is against such an intention, and the two acts shall stand together as far as possible.—24 Pick. 297, and ancient authorities there cited; 3 Ala. R. 628; 6 Porter 231; 9 Iredell 496, 500; 2 Barb. R. 316; 2 Saund. Ch. R. 533.

In cases of apparent contradiction.in the operation of acts in pari materia, it becomes the duty of the court to diminish the conflict to the least possible amount, and to hold the former act repealed only when the repugnancy is absolute and incontrovertible.—See authorities above cited; also, 6 Barb. R. 60; 2 Cran. 358; 3 Gill. R. 138; 3 New Hamp. 473. There is no such repugnancy between the acts of 1802 and 1843, as should induce the court to declare the former repealed by the latter, and thus leave the State without a statute of limitations for ten years. It is a question of intention. The rules of construction adopted by the court are only the means resorted to to discover the intention. The intention may be ascertained, by a consid-

ration of the object desired to be secured, the evil to be reme-
died, the history, condition and policy of the State.—6 Barb.
R. 60; 10 Wend. 363; 3 Barb. R. 306; 2 Saund. 533.—
These all contradict the idea, that it was the intention to repeal
the act of 1802, and thereby, instead of diminishing, actually
lengthen the period of limitation.

CUTHBERT and SEWALL, *contra :*

The defendants in error rely upon the act of February, 1843,
and upon the construction given to it by this court in three sev-
eral cases, which came before it at different times, to the effect
that it operated a repeal of the former law on the same subject,
and destroyed its effect *in toto ;* and that the new law, in all
cases where prescription had commenced before its passage, but
was not then complete under the old law, created a bar in ten
years only after its passage.—Henry v. Thorpe, 14 Ala. R.
103 ; Nickles v. Haskins, 15 *ib.* 619 ; Cox v. Davis, 17 *ib.*
714.

It is a familiar principle, that the decisions of the Supreme
Court, giving a construction to statutes, become incorporated
into the law itself, and constitute a part of it ; and this is espe-
cially the case in the construction of statutes relating to real
estate. Successive determinations make the law.—3 Atk. 762;
11 Wheaton 367 ; 2 Peters 18 ; 5 *ib.* 264; 2 Brock. 288.—
The above cited decisions therefore, on the act of 1843, have
become a part of the act, and a rule of property, " and ought
not to be disturbed, except for very cogent reasons."—20 Johns.
721; 16 *ib.* 402 ; 8 Durn. & E. 504; 1 East 741; 7 Durn.
& E. 419. Besides, these decisions have been suffered to re-
main, until the very moment when the act, by lapse of time, has
had all its effect ; when, by its repeal, it can only remain to reg-
ulate rights acquired or lost under it ; and when a change of its
construction, if made, could never operate on the future, but
only on the past, to affect *vested rights,* and would be liable to
all the objections that could arise from giving to the act a re-
troactive effect.

The construction heretofore placed on the act of 1843 is cor-
rect on principle. That act and the act of 1802 have the same
general object, and cover the same field, to-wit : the limitation
of actions for the recovery of lands. The terms of the later

act are even more general and comprehensive than those of the former ; it provides a uniform limitation of *ten* years, instead of the old prescription of twenty or thirty years. Here, then, are two acts, passed at different times, relating to the same subject, but containing provisions repugnant to each other ; and it follows, from the principle universally recognized from the earliest times, that the two acts cannot stand together, but the former is repealed by the latter. " Statutes introductive of a new law, penned in the affirmative, do always repeal former statutes concerning the same matter, as implying a negative."—Harcourt v. Fox, 1 Show. 520. For further illustrations of this rule, see Dwarris on Statutes 673 ; 3 B. & Ad. 818 ; 1 M. & W. 135 ; 8 Blackf. 581 ; 5 English 588 ; 3 McLean 212 ; 4 Wash. C. C. 691 ; 1 Iowa 338 ; 3 Howard's U. S. R. 635 ; 13 *ib.* 429 ; 3 Greenl. 22 ; 10 Pick. 37 ; 9 N. H. 59 ; 2 Bibb 96 ; 6 B. Mon. 146 ; 7 S. & M. 9 ; 1 Kelly's R. 32 ; 3 Dess. 135.— And the same doctrine has been recognized and acted on in this court.—Kinney v. Mallory, 3 Ala. 626 ; Cole v. Flournoy, 9 Ala. 402 ; Jordan v. The State, 15 Ala. 746 ; Hirschfelder v. The State, 18 Ala. 112 ; 8 Porter 434. But the act of 1843 is not merely an affirmative statute, introductory of a new law, implying a negative *ex vi termini ;* it contains express *negative* words, thus indicating a clear intention to make it *exclusive* as well as *imperative,* and bringing it within this modification of the rule above laid down, that, "if a subsequent statute, contrary to a former act, have negative words, it shall be a repeal of the former act.—Dwarris 679 ; 7 B. & C. 12.

If, then, so much of the act of 1802 as relates to the subject is repealed, how is it to be regarded after such repeal ? Does it wholly cease to operate at the moment of its repeal, or does it still affect a certain class of cases, and cease to operate as to others ? An act of limitations is intended to bar the enforcement of a right, unless legally asserted within the time prescribed ; and its effect is, in one case, the acquisition of a right of property by the possession of a thing during the time limited, and, in another case, the extinction of a right which is not legally enforced during the same prescribed time. No right of property can be acquired or extinguished by virtue of such an act, unless the whole time prescribed has elapsed without any interruption. The repealed statute, then, does not wholly cease

to operate at the moment of its repeal, but still governs all cases where the entire time prescribed by its terms as a bar had elapsed before its repeal, and may be invoked at all times to protect or discharge those affected by it. But in all cases where prescriptions had commenced, but were not completed at the time of repeal, the repealed law can have no effect; as to them, it wholly ceases to operate; for, if it was powerless to aid or protect before its repeal, much less could it have any such effect after its repeal. It is the well settled rule of the common law, that a repealed act must be considered, except as to transactions passed and closed, as if it had never existed.—Dwarris 676; 9 B. & C. 752; 7 Bing. 582. This doctrine has been recognized as established law, wherever the point has been raised in this country.—8 Blackf. 581; 7 Mass. 140; 17 *ib*. 240; 11 Pick. 350; 1 N. H. 51; 1 Watts 258; 5 Cranch 283; 3 Hals. 48; 7 Barr 174; and it has been recognized by this court, in 17 Ala. 828; 4 *ib*. 487; 14 *ib*. 435; 6 Porter 372; 1 Stewart 347.

If this, then, be the empire and limit of the repealed law, the new law must commence where the old one ceases, and must control and regulate all matters within its purview upon which the old law had ceased to operate; or, in other words, the new law must regulate all things within its purview, except such rights as were vested under the old law. A new statute of limitations, then, must govern all causes of action existing when it went into effect, and not then barred by the former act. This is not giving the statute a retro-active or retrospective effect. A statute retro-acts, when it returns to the past, and changes it to the prejudice of some one, by taking from him rights actually acquired or vested.—3 Dallas 391; 7 Johns. 593; 2 Gall. 139; 2 Cranch 272. W*hat, then, are vested rights?* Are prescriptions commenced under the old law, but not completed, vested rights, which the new act cannot regulate? A prescription commenced, but not completed, is neither a vested or acquired right, nor a right at all.—Vazeille on Prescriptions, 2 vol. 451 § 790; Troplong, 2 vol. 692; Theveneau 696; 24 Merlin's Repert. 95.

Statutes of limitation affect only the remedy, and not the right; and so far as rights have not been already acquired under them, they are subject, at all times, to be changed or modified by the legislative will.—2 Mass. 84; 3 Johns. 264; 2

Vermont 540; 13 East 439; 10 B. & C. 903; 2 Bing. N. C. 202, 209, 216; 5 Clark & Fin. 13, 17; 4 Watts & Serg. 218; 4 Humph. 14; 9 S. & M. 310; 1 Hill 325; 4 Wheaton 207; 3 Peters 280; 9 Howard 526; 8 Porter 84; 1 Ala. 312; Story on Con. of Laws, § § 576, 577, 578; 2 Kent's Com. 472.

But justice and sound policy indicate, that, whenever a prescription is shortened by statute, there should always be allowed, between its passage and the limit which it establishes, a sufficient time for those against whom it operates to prosecute their rights. Statutes of limitations are always prospective in their operation: they always loook to a future limit, but not exclusively to future causes of action; they apply to all causes of action pending, and not already barred when they go into effect, whether originating at that moment or previously, unless otherwise expressly provided. These views are sustained by the civilians, and by the following common law authorities.—3 Peters 289; 2 Denio 579, 585; 10 Wend. 363.

In applying statutes of limitations to prior causes of action, the time elapsed before the statute goes into effect cannot be counted as any part of the prescription: such causes of action only accrue, in the contemplation of the act, when it commences to operate on them, and consequently the prescription required must commence with the act, and from that moment run out entirely under it. A cause of action cannot accrue, in the contemplation of the act, before the act exists, nor before it goes into effect.—Lewis v. Lewis, 7 Howard 776; Ross v. Duval, 13 Peters 62. The case of Lewis v. Lewis, *supra*, overrules the decision in 3 McLean 568, which is relied on by plaintiff in error.

But, it is said, the legislature intended to shorten the time of limitations, and therefore a construction of the act which would, in many cases, prolong it, would be contrary to such intent, and clearly against the primary rule of interpretation. It is admitted that the intention was to limit all actions to *ten years after the passage* of the act, because this is the express language of the act; but not that any actions should be barred in less than ten years from its passage, for there is nothing in the language of the act to indicate such intent, and no necessity for a construction so repugnant to its plain terms. The intention must govern, but that intention must be discovered from the

words of the act, where they are plain and unambiguous.—
Dwarris 694, 702; 6 B & C. 715; 7 ib. 560; Vattel 255 § 257.
But the objection itself recoils on those who make it; for, they
say, the proviso to the first section applies also to the second,
and thus prolongs the prescription, to a certain extent, on prior
causes of actions. It lies not, then, with the plaintiffs in error,
to make this objection, unless they can give a construction to
the act which will not present it.

The proviso to the first section applies only to that section.
There was a necessity for its application to that section, to pre-
vent a retro-active effect and a sudden extinguishment of all reme-
dy in a large class of actions to which it would apply; but there
was no necessity for its application to the second section,
which took away no remedy, and interfered with no vested
rights. Besides, the two sections are wholly separate and dis-
tinct in subject matter; there is no necessary connection be-
tween them; each may be considered a separate and distinct
act.—Bridgman on Judgments 315.

GOLDTHWAITE, J.—Under the decisions of this court in
Hallett & Walker v. Doe, 7 Ala. 332, and Doe v. Jones, 11
Ala. 63, and Kennedy v. Kennedy, 2 Ala. 571, Joseph P.
Kennedy, by virtue of the deed from William E. Kennedy, ob-
tained title to an undivided half of the premises sued for.—
This title, at his death, descended to his heirs at law, who are
the lessors of the plaintiff; and the only question really made
upon the record is, as to the effect of the statute of limitations
in divesting the heirs of their title thus acquired.

In this aspect of the case, the first question is, whether the
proviso which is found in the first section of the act of 1843
(Clay's Dig. 329 § 92) applies to the whole act, or is to be con-
fined to the section to which it is attached. As the natural and
appropriate office of a proviso is to restrain or qualify some
preceding matter, we think, upon sound principles of construc-
tion, it should be confined to what precedes, unless it is clear
that it was intended to apply to subsequent matter. In the
present case, we can perceive no good reason why the limitation
of the proviso should be extended to the second section; on the
contrary, the effect of such an application would be, to give
to that section a partially retro-active operation, which, al-

Rawls v. Doe ex dem. Kennedy.

though it is allowed, is not a construction favored by courts.—The whole argument of the plaintiff in error upon this point, is based upon the use of the word " act " in the proviso ; and although this word, in its ordinary acceptation, would include the entire statute, it is not so definite in its meaning that it may not be applied to a complete and independent section, if found in connection with it. We think it more probable that the word " act " was used as the synonyme of " section," than that the proviso was intended to apply to subsequent matter. We do less violence to the usual meaning of the word in the one case, than to the objects of the proviso in the other. The case of Coxe v. Davis, 17 Ala. 714, supports the view we have taken, and although the decision upon this point may not have the force of an adjudication, we all concur that the correct construction was given to the proviso in that case, and that its application was properly confined to the first section.

The only remaining question is, whether that portion of the statute of limitations (Clay's Digest 327 § 83,) is repealed by the statute of 1843. (Clay's Digest 329 § 93.)

By the first of these acts it is provided, that " no person who has any right or title of entry unto any lands, shall make an entry thereon, but within twenty years after such right or title has accrued." The second section of the last act limits all actions for the recovery of lands to ten years after the accrual of the cause of action, but contains no repealing clause.

It is unquestionably true, that, although the law does not favor the repeal of statutes by implication, yet, if the provisions of two statutes are so inconsistent that they cannot both stand together, the law repeals the first.—Campbell v. Wyman, 2 Port. 219 ; Kinney v. Mallory, 3 Ala. 626. Are the provisions of the two statutes we are discussing so inconsistent that they cannot stand together ? We have repeatedly held, that the act of 1843 was not retro-active in its operation, (Henry v. Thorpe, 14 Ala. 103 ; Doe v. Haskins, 15 Ala. 619 ; Coxe v. Davis, 17 Ala. 714;) and the correctness of these decisions upon this point is not questioned. The subject, therefore, on which the act of 1843 operates, can only be a possession which has continued ten years subsequent to its enactment. On what does the act of 1802 operate? The answer is, upon a possession of the period it prescribes, and which is not covered by the act of

29

1843. We say "not covered by the act of 1843," for the reason, that when the possession, which is required to operate as a bar by that act, becomes complete, it is then brought within, and of course governed by its provisions; but, until then, the last act cannot operate upon it. If a possession can exist under the first act, separately and independently of that which is required under the last, then, although both acts may relate to the same subject, the matter on which they operate is not the same, and the rule laid down by Judge Collier in Campbell v. Wyman, *supra*, applies : " that, although two statutes be seemingly repugnant, yet, if there be no clause of *non obstante* in the latter, they shall, if possible, have such construction as that the latter may not be a repeal of the former by implication."

Upon the application of this rule, it would seem to follow, necessarily, that the act of 1802 remains in force as to possessions commenced under it, until the possession is covered by the act of 1843. This construction results from the prospective operation of the last act, and is in harmony with the general principles of law, and the spirit of the English as well as the American decisions, (Wilkins. on Lim. 140 to 147 ; Cochran v. Spiller, Vern. & Scriv. 468; Eakin v. Rawle, 12 S. &. R. 330; Williamson v. Field, 2 Sanf. Ch. Rep. 533 ;) and we may also add, that it is in conformity with the doctrine of the civil law.—Delvincourt Code Civil 633 ; 2 Vazeille Traite des Prescriptions, Art. 789, 790.

A still stronger argument, however, in support of the conclusion to which we have arrived, is to be found in the intention of the legislature as deducible from the act of 1843. Upon this matter we think there can be no difference of opinion. The statute speaks for itself, and says, that the bar arising from adverse possession is to be diminished in one class of real actions to one fourth, in writs of right to one third, and in all other real actions to one half of the time which had previously been required; thus being, in effect, a legislative declaration, that the time which was necessary under the old law to effect a bar, was too long ; and in the face of this declaration, we are called upon to sustain a construction directly the reverse of that which is indicated by the act, as the policy of the law—a construction which would, in many instances, have the effect of increasing the time required to complete a bar, and which, in extreme

Rawls v. Doe ex dem. Kennedy.

cases, would have the singular effect of adding to the possession the same number of years which the legislature, in effect, declare ought to be taken from it. It would present a singular anomaly, not to say absurdity in legislation, for the law-maker to declare that the period of possession required to bar an outstanding title was too long, and at the same moment enact a statute which would increase that period. To give to the statute the construction insisted on, would not only be in violation of well settled legal principles, but directly subversive of the will of the legislature, and if adopted must tend materially to impair the confidence of the community in the soundness and practical good sense of legal distinctions.

We have elaborated our views as to the operation of these statutes, more than we should have done, for the reason, that it has been urged, that the question we have discussed is not an open one in this court—that a different construction was given to the act of 1843, in the case of Henry v. Thorpe, 14 Ala. 103, and that the construction there given was recognized and affirmed in the later cases of Doe v. Haskins, 15 Ala. 619, and Coxe v. Davis, 17 Ala. 716. If this be so, and the construction thus given was made under such circumstances as to give to these cases the force of adjudications upon the questions here presented, whatever may be our own views as to their correctness, we should feel bound, from a just regard to the rights of others, who may be supposed to have acquired titles under them, to adhere to the rule which they have established. The evils arising from a wrong decision, great as they may be, would, in our opinion, weigh but little, in comparison with the consequences which might ensue to the community from the establishment of a precedent, under which the most solemn adjudications of this court in relation to the titles of real property might be questioned and abrogated. The doctrine of the English courts is, to adhere to the authority of adjudged cases, "where they have been so clearly, so often, or so long established, as to create a practical rule of property, notwithstanding they may perceive the hardship, or not perceive the reasonableness of the rule".—1 Kent 478.

"The absurdity of Lord Lincoln's case," said Lord Mansfield, "is shocking; however, it is now law."—Doe v. Pott, Doug. 695. But we must be careful to confine this rule, as to

the authority of adjudged cases, to the points actually decided, and the true principles of the decision. In every court, if a case varies from the facts and circumstances of preceding authorities, the judge is at liberty to found a new decision on these circumstances, (Lord Eldon, 8 Dow. 112); and it has never been asserted, that we are aware of, by any court, that every thing which is said by the judge, in delivering his opinion, is to be taken as law, or that his argument, upon legal questions, not properly arising upon the facts of the case, is to be regarded with the deference due alone to the true principles on which the decision should rest.—Best, C. J., in Richardson v. Mellish, 2 Bing. 229. With these remarks, we proceed to an examination of the several cases which are relied upon by the defendant in error, to sustain the position that the act of 1802 is repealed by the act of 1843.

In Henry v. Thorpe, *supra*, which was a writ of right barred in thirty years under the ninth section of the act of 1802, the action was brought in 1845, and the adverse possession commenced in 1818. Collier, C. J., who delivered the opinion of the court, in stating the question presented, says : " We come now to consider the case with respect to the statute of limitations. The statute of thirty years had not completed a bar in 1845, when the present action was instituted, and the question is, whether that statute, in connection with the act of February, 1843, or the latter in itself, constitutes a bar. It is contended by the defendants that the acts of 1802 and 1843 must operate proportionally, and that, as five-sixths of the period of limitations prescribed by the former had elapsed before the latter was enacted, one sixth of the time prescribed by the act of 1843 being added, the bar would be perfect." The judge then proceeds, " We have not been able to find any decision of a court recognizing the common law, in which the time elapsed under a repealed statute of limitations has been taken into account, to help out the prescription of the new law, when the period required by the old enactment had not expired previous to its repeal. Such a doctrine is not supported by the civil law. The citations of the counsel for the plaintiff show, that civilians do not entirely concur in their opinions on this question ; yet the majority of them, and the best reasoned discussions, maintain that it is competent to modify the terms of prescription at pleas-

ure, and where the prescription has not been completed when the law was changed, the past shall be effaced, and the substituted law shall determine the time that bars a recovery. It is certainly allowable, and perhaps would be altogether just, that effect should be given to the time past, whenever a change is made in the statute of limitations, so that the term may not be protracted ; but, if no such provision is made by the new law, we cannot perceive by what authority the courts can give to both statutes a proportional operation. The latter, if not an express, will operate as an implied repeal of the former, and thus destroy its effect *in toto*." It is obvious from the statement of the case, that the question as to the repeal of the act of 1802 by that of 1843, was not presented upon the facts. The possession commenced in 1818 ; the action was brought in 1845 ; so that thirty years, the time required under the first act, had not then expired. The bar was not complete under the second act, because it had not then been passed ten years. The only question presented was, the one stated in the opinion of the court, which we have quoted. The decision was correct, for the reason, that the bar was complete under neither act, when the action was commenced. The question as to the repeal of the first statute does not appear to have been made by the counsel, nor did it properly arise upon the record ; and the conclusion that such was the case, was simply stated by the judge by way of argument, and appears to have been based upon the analogies of what he wrongly conceived to be the doctrine of the civil law in relation to prescriptions.—Delvincourt and Vazeille, *supra*. The vice of the opinion is not in the result, but in the course of reasoning by which the result is arrived at. It is evident that this case cannot be regarded as an adjudication of the question.

In Doe v. Haskins, 15 Ala. 620, the time of the commencement of the action does not appear from the statement of the case in the reports; but we have looked into the record, and find that the action was brought in 1847. The defendant relied on possession under a bond for titles executed in 1836, coupled with the payment of the purchase money. His possession not being sufficient under the act of 1802, or under the act of 1843, unless the latter operated retrospectively, the question was simply as to the operation of that act. Collier, C. J., rests the case on Thorpe v. Henry, *supra*. Here, also, the decision was correct;

but the question as to the repeal of the act of 1802 was not involved, and the reiteration of a portion of the opinion in the former case does not render it authoritative as a precedent, except as to the point actually decided. The last case, that of Coxe v. Davis, 17 Ala. 714, does not present the question at all, and the decision, at the most, goes no further than to sustain the prospective operation of the act of 1843.

We recur again to the question, has the point under discussion· been adjudicated in either of the three cases which we have examined? We have shown, that, in neither of them, was the point directly presented, nor was its decision incidentally involved, or required to be made in order to reach the point presented. In neither of the cases had the period of possession prescribed by the act of 1802 been consummated. Under such circumstances, we cannot regard these adjudications as conclusive of the question presented upon the present record. We must regard it as before us for the first time, and give to the expressions in the opinions relied on only such weight as is properly due to them upon principle and authority.

Upon the fullest consideration of the question, we are satisfied that the doctrine argumentatively asserted,in Thorpe v. Henry, *supra*, that a change of the period of prescription, *of itself*, effaces the time which has passed under the old law, if not sufficient to perfect the title, and that prescriptions commenced under the old law, in all cases in which they were not complete at the time of the change, must be determined by the new law, cannot be sustained. We hold that the statute of 1802 is not repealed by the act of 1843, and that prescriptions commenced under the first act are governed by it, until they fall with the operation of the last; and the consequence is, the possession of the defendants below for more than twenty years before the commencement of the action, furnished a full defence as to Oscar Kennedy.

The result is, that upon the case made by the record, the plaintiff was entitled to recover, on the separate demises laid in the declaration from Charles G. Shrieve and Mary his wife, and Ella Walker, one undivided sixth of the lot described in the consent rule, on each demise; the rule being, that where the statute runs against one tenant in common or co-parcener, its operation as to him does not affect the co-tenants who are within

the saving of the statute, upon separate demises by them.—Roe v. Rawls, 2 Taunt. 441; Lewis v. Barksdale, 2 Brock. 426; Jackson v. Sample, 1 John. Cases, 231; Doolittle v. Blakely, 4 Day 265; Sanford v. Button, *ib.* 310; Cullen v. Motzen, 13 S. & R. 350. The court, therefore, erred in giving judgment for the whole of said lot, and its judgment must be reversed, and, under the rule established in Edmonds v. Edmonds, 1 Ala. 401, the cause must be remanded.