## PURYEAR v. PURYEAR.

1. When a husband permits the wife to place the proceeds of the hire of a slave, out at loan for her own use, which after his death, was paid to her by the borrower, the representative of the husband cannot recover it from her. But the husband could not make such a gift to the prejudice of creditors, either during his life, or to take effect after his death.

Error to the Circuit Court of Monroe.

ASSUMPSIT by the plaintiff in error, administrator *de bonis non* of Alexander B. Puryear, against the defendant in error, for money had and received, &c.

From a bill of exceptions, it appears, that the defendant, who is the widow of the plaintiff's intestate, during the lifetime of her husband, had monies in ·her hands, which she loaned out, to the amount of $——, and that after the death of her husband, this money was repaid to her.

The defendant on her part produced, and read to the jury, a will, containing the following clause: "I give and bequeath to Mary F. Puryear, during her life, one negro man Davy, and if the said Mary should die without issue, it is my desire, that the said negro should return, and be equally divided amongst Louisa C. Dailey, Joseph B. Edwards, and Osborn Edwards; but if she should have a natural heir of her body, then at her death, I give and bequeath the said negro man Davy, to her heirs forever. I appoint Samuel Dailey trustee, to hold the said negro Davy for the benefit of Mary F. Puryear."

She also proved, that with the consent of her husband, she hired out the negro Davy for many years; and that part of the time, her husband hired out the slave and paid her the hire, and that the husband, during his life, acknowledged the slave to be her property—this declaration was made in reference to the will. That he recognized her right to lend the

money she had received for the hire of the negro, and to receive repayment of the same.

On this evidence, the court charged the jury, that the defendant took a separate estate in the slave, under the will, and was therefore entitled to his earnings.

Further, that if this were not so, yet if the husband recognized such estate as being in the wife, and allowed her to collect, and lend out the proceeds thereof, as her own, whatever might be the right of creditors to pursue such proceeds, the executor could not recover this fund as assets of the estate.

This was excepted to, and is, and is now assigned as error.

DARGAN, for plaintiff in error.

The will of the father of Mrs.' Puryear did not give her a separate estate in the slave David. [8 Porter, 72; 2 Ala. Rep. 152.

A contract between husband and wife is void at law. [4 Kent, 129; 4 Dana, 142; also, 1 Black. Com., title Husband and Wife; 10 Peters, 583.]

PECK, contra, cited the case of McGrath v. The Adm'rs of Robertson, 1 Desau. 445; Smilie v. Reynolds, et al. Adm'rs, &c., 2 Desau. 66; Clancy's Rights of Married Women, 277, 278; Livingston v. Livingston, 2 J. Ch. Rep. 537.

If it be conceded that the husband, during his life, might have asserted his right to this money, yet as he did not do so, the executor cannot do it, unless it be necessary for the payment of debts. [2 Story Com. Eq. § 1375.]

ORMOND, J.—The first charge of the court cannot be supported. There is nothing in the bequest, from which it can be inferred, the husband was to have no dominion or control, over the life estate of his wife, in the slave; she cannot therefore have a separate estate in it. This has been repeatedly adjudged by this court, and especially in the case of Cook v. Kennerly, at this term, where all the decisions of this court, upon this subject, are considered.

We are then to consider, whether the facts shown upon the record, establishing that the husband permitted his wife

to take the hire of the slave, during the coverture, authorizes her to hold it against the executor of the husband.

The husband and wife, being in legal estimation but one person, the former cannot make a gift, or conveyance of property to her, which she can enforce at law; though a court of equity, when there is sufficient consideration for the agreement, may, and generally does give effect to it. But if the husband makes an actual gift of money to the wife, which she retains until after his death, though he could have reclaimed it in his lifetime, and although it would certainly be liable to the payment of his debts, we think the personal representative cannot recover it from her.

This principle appears to be settled in Hastings v. Douglass, 3 Croke Charles, 343. The question arose in that case, upon a devise made by a husband, of his wife's jewels, giving her the use of them during her widowhood, with remainder to his daughter. Berkley, and Jones, Justices, argued, that the act of the husband during his life, by which the wife was permitted to use the jewels to deck her person, was in law a gift, and although he might have disposed of them in his lifetime, he could not make such disposition by will. Croke, and Richardson, maintained, that the husband could dispose of them by will, as well as by any act during his life; but the inference from the whole case is, that in the absence of any such disposition by the husband, the wife would be entitled to them after the husband's death.

It appears now to be settled, that a gift of jewels to a married woman, by a stranger, will be considered as being given to her separate use, and that if given to her by the husband, she may hold them against every one, but the creditors of the husband. [Ridout v. Lord Plymouth, 2 Atk. 104; Graham v. Lord Londonderry, 3 Ib. 393; Tipping v. Tipping, 1 P. Will. 729.

So it has also been held, that where the husband permits the wife to retain the excess, over the sum allowed for the expenses of the family, by her thrift and management, she will be entitled to hold it against his personal representative : and where she had lent a portion of the money thus saved to the husband, was permitted to come in as a creditor, after his death. [Slanning v. Style, 3 P. Will. 337.] The Lord

Chancellor in this case observed, "that it was the strongest proof of the husband's consent, that the wife should have a separate property in the money arising by these savings, in that he had applied to her, and prevailed with her, to lend him this sum, in which case he did not lay claim to it as his own, but submitted to borrow it as her money."

This case is quite as strong in favor of the wife, as any of those cited. The husband in this case doubtless considered that the intention of the testator was to give the wife a separate estate in the slave, and therefore abstained, not only from appropriating to himself the services of the slave, but to place the matter beyond all doubt, and to prevent all controversy about the right of the wife, by his own act permitted the wife to place the proceeds of the hire of the slave upon loan for her own use, and benefit. He might doubtles have revoked the consent thus given at any time during his life; it is equally clear he could not make such a gift to the prejudice of his creditors, either during his life, or to take effect after his death. Whether he could dispose of it by will, we are not now called on to decide, though it would seem by analogy to the right of the wife to her paraphernal or *dotal* property after her husband's death, that he could not; but that the personal representative of the husband could not assert a claim against the wife, in such a case as this, is we think quite clear, both on principle and authority.

We can perceive no reason whatever, why the wife, in cases like this, should not be protected in the enjoyment of the property by a court of law. If she were compelled to sue the personal representative, as for a debt due from her husband, possibly she would have to resort to a court of equity; but being in possession of the fund, and having the right to retain it, she has both the legal and equitable title to it, and may doubtless defend that right in a court of law. The acknowledged principle, that where the evidence of a debt is in the name of a married woman, the husband may join his wife with him in the suit, and that if he does, it will survive to her, if he dies pending the suit, is entirely analagous to this case, and shows, that after the decease of the husband, without reducing the money to his possession, the legal title to it is vested in the wife. The facts of this case are, that the

husband himself in some instances, and the wife by his permission in others, hired out the slave, and placed the money out on loan for the wife's benefit, and that the money so lent has been paid to her since the husband's death. The money, in point of fact, since the loan for the benefit of the wife, has never been reduced by the husband to his possession—and the placing it out on loan, in the wife's name, and for her benefit, is surely quite as strong evidence of the intent on the part of the husband that the wife should have an interest in it, as would be the commencement of a suit, in the joint name of husband and wife, on a note made to the wife during coverture. [Morris v. Booth and wife, 8 Ala. 907; Philliskirk v. Pluckwell, 2 M. & S. 393; Burrough v. Moss, 10 B. & C. 558.

Although the court incorrectly charged the jury, upon the effect of the will, no injury was done to the plaintiff, as upon the whole case, it is clear he is not entitled to recover; and the case will not be reversed for an error, which could work no prejudice.

Judgment affirmed.