COMBY ET ALS. *vs.* McMICHAEL ET ALS.

1. When the objects of a trust are fully performed, the title of the trustee ceases, and the legal as well as the equitable title vests in the beneficial owner, unless the intention of the grantor that the legal title should continue in the trustee clearly appears.

2. When parties have a joint legal title to personal property, an equity existing between themselves will not enable them as complainants to file a bill in chancery, to redress an injury done to their joint legal title.

3. A *feme sole* conveyed her undivided interest in certain personal property, which had been bequeathed to her and her brothers and sisters by their father, to a trustee, in trust that he should take the same into his possession when divided, and hold it for the use and benefit of herself and the issue of her body, and at her death should convey the same to such of her issue as might then be living. She afterwards married, and her portion of the slaves after division went into the possession of her husband. After her death her children filed a bill for the recovery of the slaves, against their father and others claiming under him. *It was held,*

  1. That the complainants' title, if they had any at all, was a legal title for which they had a perfect legal remedy.

  2. That the prayer for a division of the slaves among the complainants did not give the court jurisdiction to render a decree against the defendants.

Error to the Chancery Court of Benton. Tried before the Hon. D. G. Ligon.

J. B. Martin, for plaintiffs in error:

The court of chancery has jurisdiction in this case. There is a trust shown, which remains unexecuted, and the trustee being dead, the court will appoint another in his stead, if nothing more.—2 Hen. & Mun. 11; 4 Hayw. 4; 9 Cow. 524; 2 Eng. Com. Law R. 409; 9 Ala. 999. The legal title being in the trustee, the remedy of the *cestuis que trust* is only in equity.— 17 Ala. 636; Ib. 743.

The bill charges that the trust property is being wasted, that defendant asserts an absolute title to the property, that he has sold one of the negroes, and disposed of the remainder, all which allegations are admitted in the answers and are sufficient to give the court jurisdiction.—5 Ala. 523. Again, the property is in the possession of several persons.

The deed in this case vests the estate in, and is a settlement in favor of the children of the donor, retaining the use and enjoyment only to herself and children during her life, which, when executed and delivered, became irrevocable.—4 Ala. 350; 10 ib. 819; 14 ib. 437; 17 ib. 214.

The main question arises upon the construction of the deed. Does it create an estate tail in the mother of complainants? Wherever there is an apparent intention to use the terms "heirs," "issue," &c., in their natural sense, that construction will be

given to them.—6 Browns P. R. 309; 1 Term R. 593; 2 Roper on Leg. 355; Fearne on Rem. 184, Note; 17 Ala. 62; 12 ib. 135; 9 ib. 1003.

The entire clause, when taken together, clearly shows that by the term "issue" the donor meant and intended children, and that such as she might have living at the time of her death should take the absolute estate. 1. Because such is the language of the deed itself. 2. Because it is a marriage settlement. 3. Because it is consistent with the manner in which the persons by whom the property was to be enjoyed, and the person by whom the property was to be conveyed.—1 Peere W. 452; 5 M. & S. 95-100; 2 Atk. 89; 3 Ves. 388; 7 ib. 522; 1 ib. 145; 17 Ala. 63; 12 ib. 135; 18 ib. 132; 9 ib. 1003; 1 Bay. (S. C.) 78; 1 Johns. 440; 16 ib. 434; 3 Marsh. 289; 1 Peere W. 663. According to the terms of the deed, the absolute estate must necessarily vest at the death of the donor, in the issue (i. e. children) which she might then have living; and if she died without issue, it was to revert back to her brothers and sisters, who are shown by the deed to have then been in existence. There is no pretence for saying that there is even a squinting at a perpetuity. The whole deed will be taken together, and if necessary, the word "or" will be construed "and."—2 Vez. 34; 8 East. 149; 15 ib. 389; 16 ib. 67; 3 Peere W. 258; 15 Ves. 476; 13 Serg. & R. 205; 5 Binney, 252; 7 Penn. 13; 9 Ala. 999.

Rice & Morgan, *contra:*

1. The death of the trustee does not give jurisdiction of such a bill to a court of chancery. There is nothing stated in the bill which confers jurisdiction. If complainants are entitled to relief any where, they must seek it in a court of law.—Colburn v. Broughton, 9 Ala. 351; Robinson v. Robinson, 11 ib. 947; State Bank v. Smith, 6 ib. 75; Watson v. Bothwell, 11 ib. 650.

2. The bill is multifarious. It seeks, among other things, a partition of the property, in which partition none of the defendants have an interest.—Meacham v. Williams, 9 Ala. 842.

3. The deed of Lucy S. Paulett, before her marriage, of which it is not pretended or alleged her husband had any notice before his marriage with her, is fraudulent and void as to him, and cannot defeat his marital rights. As to him, that deed is mere waste paper. The common law does not impart validity,

and no law of Georgia is alleged which made it valid.—Waller v. Armistead, 2 Leigh's R. 11; England v. Downs, 17 Eng. C. 522; 2 Beavan, 522; Linker v. Smith, 4 Wash. C. C. 224; Ball v. Montgomery, 2 Ves. jr. 191-94; Atherley on Mar. Set, 319; 1 Story's Eq. Ju., § 273.

4. The complainants have no right to the property under the deed, as against the husband, who is the defendant in this case. The limitation to them is void.

5. The bill contains no allegation that there was any law of Georgia giving validity to any such deed, as against a husband; nor does the bill allege or pretend that the husband at or before the marriage had notice of the deed, or that he ever assented to it since, but the contrary of all this is inferrable from the bill; and all intendments are against the pleader who filed the bill.

DARGAN, C. J.—Richard Paulett, who resided in the State of Georgia, being possessed of certain slaves, executed a deed, by which he conveyed them to his children, to be divided when his youngest child arrived at the age of fifteen years. Before the division took place, Lucy Smith Paulett, one of the daughters of the grantor, conveyed her undivided interest to her brother, Lewis Paulett, in trust, that he should take the same into his possession when divided, and retain it for her use and benefit, and for the use and benefit of the issue of her body, and *at her death convey* the same to such of her issue as should be *living at her death*. After the execution of the latter deed, Lucy Smith Paulett intermarried with William McMichael, by whom she had several children. The slaves were divided between the children of Richard Paulett, and Bob, Jinny and Maranda fell to the lot of Lucy. These slaves went into the possession of William McMichael, the husband, who sold Bob, but yet retains the possession of Maranda. Jinny, the other slave that fell to the lot of Lucy, is dead. William McMichael removed to the State of Alabama, and his wife died here; and this bill is filed by her children against William McMichael, their father, and others, to whom a portion of the slaves (being the issue of the females) were hired. The chancellor dismissed the bill, on the ground that the deed executed by Lucy to her brother in trust for her and her issue, created in her an estate tail, and consequently her husband, by virtue of his marriage, took the entire

right to the slaves, to the exclusion of her issue living at her death.

We entertain no doubt but that the decree, dismissing the bill, must be affirmed, without regard to the question whether the remainder over to the issue of Lucy S. Paulett be valid or not. For if it were admitted even that the chancellor was wrong in the construction of the deed, and that the children of Lucy, by virtue thereof, became entitled to the slaves after the death of their mother, still it is manifest that they have a perfect legal remedy; for their title would be a legal and not an equitable one, and there would be no impediment in the way of their suing at law. The general rule of law is, that when the objects of the trusts are fully performed, the title of the trustee ceases, and the legal, as well as the equitable title, will be vested in the beneficial owner, unless indeed it plainly appears that it was the intention of the grantor that the legal title should continue in the trustee, notwithstanding the trusts are fully executed. If the trusts be created by will, the courts will presume that the testator intended to give the trustee exactly that quantity of estate necessary to the completion of the trusts. It was on this principle that the case of Lord Saye & Scale v. Jones, 1 Eq. Cases, was decided; there lands were devised to trustees and their heirs to pay legacies and annuities, and then to pay the surplus rent into the proper hands of a married woman, and after her death to stand seized of the lands to the use of the heirs of her body. It was decreed that the trustees took the legal title during the life of the *feme covert*, but that after her death it vested in the heirs of her body.—See also, Robinson v. Gray, 9 East. 1; Hill on Trustees, 239.

It is true that courts are more cautious, when the trusts are created by deed, in restraining the title of the trustee to the mere purposes of the trusts, and will not cut down the title of the trustee to a life estate, or other less interest, in opposition to the language of the deed, merely because an estate in fee was unnecessary to the completion of the trusts.—Wykam v. Wykam, 18 Ves. 420-23; Hill on Trustees, 251. But where the instrument by which the trusts are created *clearly* contemplates that the title of the trustee shall cease upon the performance of the trusts, then the legal title must determine on the performance of the trusts; otherwise the trustee would take a larger estate than was intended by the grantor.

Applying this principle to the case before us, we entertain no doubt but that the title of the children of Mrs. McMicheal (if they have any at all) to the slaves in question, is purely a legal one. It is clear that the deed, by which the legal title was conveyed to the trustee, contemplates that his title should cease upon the death of Lucy S. Paulett, the mother of the complainants; for he is there directed by the deed to convey the slaves to her children then living. This clearly shows that it was not the intention of Lucy S. Paulett that the trustee should retain the legal title longer than she lived, but that it should cease at her death. Nor can it be insisted that the legal title remains in the trustee until he actually makes a written conveyance; for the subject of the trust being personal property, the legal title will pass to the *cestuis que trust* by the mere delivery of the property in pursuance of the trusts. Upon the marriage of William McMichael with Lucy S. Paulett, he became entitled to the estate reserved to her by the deed, and as he received the slaves into his possession, and held them until the death of his wife, the trust was completely executed, and the children of Lucy S., his wife, if entitled at all, then became entitled to the slaves, and could have maintained trover or detinue for them against any one who detained them; for the title of the trustee then ceased, and there was no need of an actual written conveyance to invest the children with this legal title.

But it is insisted, that the prayer for a division of the slaves amongst the complainants gives the court jurisdiction. But this cannot be. If we admit that equity will take jurisdiction to divide personal property amongst joint owners, this equity exists amongst the complainants themselves, and cannot convert their legal title against the defendants into an equitable one. Parties may have joint interests in property, and equities as between themselves, but this equity will not enable them as complainants to file a bill in equity to redress an injury done to their joint legal title. On this ground the bill must be dismissed.

Whether the plaintiffs have any title to the slaves even at law, that is, whether they can take the remainder created by this deed, or whether their mother became entitled to the absolute property, as the case now stands, we will not decide; for it is not absolutely necessary to the disposition of the case, and we should prefer to have that question re-argued before deciding it.