## BRYAN AND WIFE *vs.* WEEMS, EX'R, &c.

1. A decision of the Supreme Court is conclusive when the case in which it was rendered is brought back a second time on appeal.

2. If a woman marry before the expiration of the term for which her slaves are hired out, the hire for the unexpired portion of the term, though included in the notes taken, is a part of the income (and not the *corpus*) of her estate, and therefore her husband is not accountable for it under the act of 1848.

3. If the wife dies intestate as to a portion of her estate only, her husband is entitled, under the acts of 1848 and 1850, to one half of the personal property undisposed of.

4. On a final settlement by the husband of his administration on his wife's estate, he is entitled to a credit for payments made by him during the marriage of debts contracted by her while sole which constituted a charge on her separate estate.

APPEAL from the Court of Probate of Marengo.

SAMUEL W. WEEMS, as executor of his wife Penelope, having been cited by the appellants to settle his administration on her estate, the following rulings of the court in his favor

were excepted to, which are now assigned for error : In allowing said executor credits for debts contracted by his wife before her marriage, and paid by him after marriage ; in refusing to charge him with the whole hire of her negroes during the year 1849, and in only charging him with the *pro rata* value of the hire from the first of January to the time of marriage in March, 1849 ; and in the order of distribution allowing him one half of the estate as to which the wife died intestate.

WM. M. BYRD, for the appellants :

1. The property of the testatrix having vested in her by her marriage in March, 1849, under the " woman's law" of 1848, it was out of the power of the Legislature to divest, or interfere with, her title by the subsequent act of 1850, and by the Code. The right of the testatrix to the profits of her estate, was perfect, and vested in her by the act of 1848, and having vested under that act, she had the absolute title in them which the Legislature could not divest or control. If the principle of the sanctity of " vested rights" is held applicable to the estate which vested under the act of 1848 in a married woman in her own property, then the court below erred in refusing to charge said executor with said notes given for hire in 1849, should the court come to the conclusion that said notes should be taken to be the profits, and not the *corpus* of the estate.

2. The notes given to the guardian previous to the marriage, as to the husband, must be taken as a part of the *corpus* of the estate ; and the court below, therefore, erred in refusing to charge said executor with the whole of said notes. This court has held, that the hire of a slave for a year is an absolute sale of his services for that time, as much so as a sale for life, except in the first case the law implies certain duties on the part of the person who hires, which it does not do in the latter ; and it cannot be doubted that, if the guardian had sold the slave, and taken a note, due twelve months after date, and then the marriage had taken place before the money was due, the note would have been a part of the *corpus* of the estate without any abatement, and therefore must be so held in the case of a hiring.

3. The husband is by the statute constituted trustee of the wife's estate, without being liable to account for the profits, and should the court hold that she is not entitled to the profits under the act of 1848, but that the same can be held by the husband under the Code ; then it is insisted, that as the evidence shows that such profits largely exceed the debts paid by the husband during the marriage, though contracted before, said debts should be considered as paid by him out of such profits, and should not be a charge on the *corpus* of the estate, and therefore the court below erred in allowing said executor such debts in his account, thereby charging them on the *corpus*. The husband, though not held to account for such profits, in law and equity must be considered as holding them for the benefit of the wife ; and should he pay her debts, as in this case, during the marriage, the court should consider them as paid out of the profits to the extent thereof. As other trustees, he should pay all debts and incumbrances out of the profits until they are exhausted, before he can charge the *corpus* of the estate with them.

4. The law provided that the husband, on the death of the wife " intestate," should be entitled to one half of the estate. But the wife did not die " intestate," and the Code does not provide for the husband in case the wife dies testate ; and therefore the court erred in making a decree in his favor for one half. This point must be determined from the construction to be given to the law, and therefore it is submitted that the above is the proper construction to be given under the rules governing the same.

A. R. MANNING, *contra :*

I. Even though a testator, in giving to one of his sons or daughters a part of his estate, say expressly " he (or she) shall not have any more thereof," and he dies intestate as to a part of his property, the legatee is entitled by law to a distributive share of that.—Denson and Wife v. Autrey, ex'r, &c., 21 Ala. 205 (especially 208–9). 2. According to the proposition contended for by plaintiffs in error, if a married woman, having under the acts of 1848–50 an estate worth $100,-000, should at her death leave a will providing for the emancipation of a favorite slave, and making to him a small bequest,

or should make such a bequest to a friend, the surviving husband is to be thereby deprived of any share of all the rest of her property, as to which she dies intestate. To this extent the principle would operate. I understand the acts referred to, in this regard, as simply placing the husband in the list of distributees, and defining the portion he is to receive as such.

II. If the slaves had not been hired out, the husband would have been entitled under the law to their service, or the profits to be made thereby during the same period. How then, upon principle, can he be deprived of the hire earned after the marriage? It is not the *corpus* of her estate, but income arising from it after the marriage : and this the law gives to him. 2. Suppose the wife, before marriage, had hired her slaves for a period of 20 years, or for life, not for a round sum paid in hand (which being substituted for the slaves, might be used as capital, and itself be made to produce annual income), but for smaller sums, of either certain or uncertain amounts, to be paid at the end of each year of service, either as hire, or a proportionate share of the profits of the business in which the slaves should be employed. Or, suppose the body of the wife's estate to be money which she had already let out upon bond and mortgage for a series of years, on which interest was to be paid annually by the borrower. Would not the husband, under the law, be entitled to the hire or profits in one case, and the interest in the other ? And what is the difference in principle between the cases supposed, and that we are considering? 3. The point was decided, however, when this cause was here before.—See 21 Ala. 306–7.

III. That the debts paid by the husband during the marriage were to be paid out of the *corpus* of her estate (which, *quoad* the husband, constituted a part of the income and profits previous to the marriage and then on hand), and an allowance to the amount of them was to be made in favor of the husband on the settlement of his trusteeship, was decided between these same parties before.—Weems v. Bryan *et al.*, 21 Ala. 307. 2. Besides, it is a familiar principle that an executor, in paying the debts of his testator, shall first exhaust the property which is not specifiically bequeathed, so as not to cause an abatement of the specific legacies. In this case, the will not being operative as the testatrix intended, so as to give

to her husband all her estate, and the slaves mentioned being given to him specifically and by name, they are not to be taken from him unless necessary for the payment of debts. Nay, if a specialty creditor in England, for whose debt the lands of a testator were liable (as they are here for a debt of any kind), should obtain payment by the sale of chattels of which a specific bequest had been made, the law would so marshal the assets as to make the lands, which would otherwise have descended to the heir, respond for the amount to the legatees. If this were so in a country under whose law of primogeniture and other institutions, the heir is a kind of legal pet, and lands of much more dignity than other kinds of property, so that the perpetuation of them in the family to which they belong is a matter of great consideration, certainly the rights of a legatee and the will of a testator are entitled to as much respect here. Our statutes now declare, as reason and religion before had done, that husband and wife are nearer of kin than brother and sister ; and as legatee of each other, either would be entitled to the benefit of the rule by which assets shall be marshalled for such. Much more shall the legacy to the husband be protected from abatement, when there are other personal assets not disposed of by the will, out of which the debts of testatrix can be paid.

But really these questions do not arise upon this assignment of error. The husband paid the wife's debts in her lifetime, out of her moneys in his hands, and without dissent on her part ; and he so accounts for said moneys in the settlement of his trusteeship in the Probate Court. The matter was therefore all properly settled.

GOLDTHWAITE, J.—When this case was last here (21 Ala. 302) we held, that the husband, after the death of his wife, could not be required to account for the income of her separate estate received by him during coverture ; and this decision is conclusive upon us in the present case.—Price v. Price, 23 Ala. 609, and cases there cited. It is urged, however, on the part of the appellant, that the husband was bound to account for the hire of the slaves forming the separate estate of the wife, accruing from the time of the marriage— the 31st March, 1849—until the 1st January, 1850, for the

reason, that this hire was included in notes given to the wife, before marriage, and must, therefore, be regarded as of the *corpus* and not the income of her estate. Suppose a marriage settlement had been made, by the terms of which the wife was to hold the slaves, and take the hire up to the time of the marriage, to her sole and separate use ; and the husband to receive the hire, which should accrue during coverture?— Would it be doubted, that under such circumstances the husband would be entitled, as against the wife, to that portion of the hire which accrued after the marriage? The third section of the act of 14th February, 1850, (Acts 1849-50, p. 63), makes just this contract. It absolves the husband from liability to account for the profits during coverture ; so that the only question is, whether the amount received was for the labor and services of the slaves during the marriage ; if it is, then, by force of the statute, there is no liability. That it was received by the husband upon a contract of hire made by the wife before marriage, does not change the nature of the fund : it is still the profits of the separate estate accruing during coverture.

It is insisted by the appellant, that, as the wife died intestate only as to a portion of her estate, the husband was not entitled to one half of the personal property undisposed of by her will ; but this position cannot be sustained. Under the acts of 1848 and 1850, the husband as a distributee is entitled to take absolutely one half of the wife's personal estate, unless she makes a different disposition of it by will ; and a case of partial intestacy falls under the general law applicable to cases of that character, which provides for distribution of the property not bequeathed as if no will at all had been made.—Clay's Digest 597 § 7 ; Denson v. Autrey, 21 Ala. 205.

Neither was there any error in the action of the court, allowing to the husband, as executor, the payments he had made out of her estate for debts incurred by her before marriage ; the record showing that these debts were a proper charge against such estate in the hands of her guardian. Under the acts to which we have before referred, the husband, by virtue of the marriage, occupies the position simply of trustees of the property belonging to his wife ; and certainly a trustee

might well out of the trust estate pay debts which were a legitimate charge upon it, before he became the trustee ; and if he paid those debts out of his own money, he should in justice be entitled to look to the property to which they were properly chargeable to reimburse himself.

The ruling of the probate judge on the questions considered, being in conformity with the law, the judgment is affirmed.