ANDREWS AND WIFE *vs.* HUCKABEE'S ADM'R.

[BILL IN EQUITY FOR ACCOUNT AGAINST TRUSTEE'S ADMINISTRATOR.]

1. *Plea of statute of non-claim.*—A plea of the statute of non-claim, in a chancery cause, must aver all the facts necessary to make the bar complete and applicable to the cause of action: a simple averment, that the claim was not presented within eighteen months after the grant of administration and

notice thereof, is not sufficient, when a portion of that time was effaced by a change in the statute before the completion of the bar.

2. *Computation of time under statute of non-claim.*—Where notice of the grant of administration was given in October, 1851, and suit was afterwards commenced on the 17th July, 1854,—*held*, that the claim was not barred, either under the Code, or under the act of 1850.

3. *To what demands statute of non-claim applies.*—The statute of non-claim is not applicable to a demand for the recovery of specific property.

4. *Husband's liability for income and profits of wife's separate property.*—Where husband and wife live together, and enjoy a common support from their joint property; and the husband receives the income and profits of the wife's separate estate, with her knowledge, and without objection from her,—it is presumed to be intended as a gift to the husband, and neither he nor his estate is liable for such income and profits.

5. *Title of trustee.*—The title of the husband, as implied trustee of the wife's separate property conveyed directly to her, ceases at his death, and the legal as well as the equitable title then vests in her; *secus*, as to slaves purchased by the husband, with funds belonging to the wife's separate estate, and the legal title to which was taken to himself as her trustee.

6. *Jurisdiction of equity where remedy at law is adequate and perfect.*—A widow's remedy against the personal representative of her deceased husband, for the specific recovery of slaves belonging to her separate estate, of which her husband had possession as her trustee, is adequate and perfect at law, and consequently she cannot come into equity; *secus*, as to slaves which the husband purchased, with money belonging to the wife's separate estate, and the legal title to which was taken to himself as her trustee.

7. *Slaves purchased by husband with his own money no part of wife's separate estate.*—Where the husband purchases slaves with his own money, intending to permit his wife to take them, if she chose, as an investment of funds in his hands belonging to her separate estate; takes the title, by mistake, to himself as her trustee; and dies soon afterwards, without affording her an opportunity of making the intended election,—the wife cannot claim the slaves as a part of her separate estate.

8. *Interest charged against husband's administrator.*—The personal representative of the husband is liable, in equity, for money received by the husband during coverture, belonging to the *corpus* of the wife's separate estate: if the money was received upon the express condition that it should be invested in slaves, and he died so soon afterwards that he had no opportunity of making a desirable investment, interest should only be charged from the time of his death; but, if it is shown that he loaned out a portion of it, interest should be charged against him on this sum from the time it was loaned.

APPEAL from the Chancery Court of Greene.
Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by Patrick H. Andrews and wife, the appellants, against the administrator of George F. Huckabee, deceased, who was the former husband of Mrs.

Andrews, to compel an account and settlement of the intestate's trusteeship of his wife's separate estate, which she held under the will of her father.  Huckabee and wife were married on the 11th January, 1850 ; and Huckabee died on the 24th March, 1851.  The contested items of the account are, the hire of slaves belonging to the wife, which the husband received for the year 1850 ; the hire for the year 1851, received by him and his administrator ; certain slaves, alleged to have been purchased by the husband with money arising from the sale of the wife's lands, and which she seeks to recover specifically ; and moneys in the hands of the husband, arising from the same source, which he failed to invest.  The facts relating to these several matters, so far as they are necessary to a correct understanding of the legal principles involved, are stated at sufficient length in the opinion of the court.

Among other defenses, the defendant set up the statute of non-claim ; the allegations of his answer as to this plea being as follows : "This defendant, further answering, saith, that said complainants, nor either of them, ever applied to him, as administrator of Geo. F. Huckabee, deceased, and requested him to render an account of the acts and doings of his intestate as trustee for the said Harriet, for either the principal, interest, profits, rents or hires of her separate estate ; but said Patrick H. Andrews, a short time before the filing of this bill, called on this defendant with an account for about $8,000 (as he now remembers) on account of the separate estate of the said Harriet, and presented the same to this defendant as a claim against his intestate's estate, and demanded payment thereof ; which account defendant refused and declined to pay.  Further answering, this defendant saith, that letters of administration on the estate of his intestate were granted to him, by the probate court of Greene county, on the 27th October, 1851 ; that he qualified as such administrator on that day, and took upon himself the burden of said administration ; that immediately thereafter, and within two months, he gave notice of his appointment as such administrator, by publication in the

*Alabama Beacon*, a newspaper printed and published in Greene county, for six successive weeks, as by law required, notifying all persons holding claims against said estate to present the same within the time prescribed by law, or that the same would be barred. And this defendant avers, that complainants' claim in this cause was not presented to him, as administrator as aforesaid, within eighteen months after the grant of letters of administration to him, nor within eighteen months after the publication of the aforesaid notice; and this defendant therefore claims the benefit of the plea of the statute of non-claim, in pursuance of the provisions of the Code in such cases made and provided."

The bill was filed on the 17th July, 1854.

The chancellor held the plea of the statute of non-claim a complete bar to the recovery of the money which the husband received as trustee of his wife; and on final hearing, on bill, answer and proof, dismissed the bill, but without prejudice to the complainants' right to proceed again, either at law or in equity, for the recovery of $1,000, loaned by the intestate to Isaac Croom; and his decree is now assigned as error.

Wm. P. Webb, J. D. Webb, and R. F. Inge, for the appellants.—1. The statute of non-claim does not apply to the case.—Locke's Executor v. Palmer, 26 Ala. 324; Gordon v. Gibbs, 3 Sm. & Mar. 490. Moreover, if the statute be held applicable, the necessary time had not elapsed, before the filing of the bill, to complete the bar. McHenry v. Wells, 28 Ala. 451.

2. If the husband received and held the property as the separate estate of his wife, equity will compel him to execute the trust.—Williams v. Maull, 20 Ala. 721; Sledge v. Clopton, 6 Ala. 589; 2 Story's Equity, §§ 976, 977.

3. The implied assent of the wife, to the husband's receipt of hire, &c., is fully rebutted by the proof that he expressly agreed to receive it as trustee; and if such assent could be implied at all, it certainly could not be extended to the hires for the year during which the hus-

band died.—2 Bright on Husband and Wife, 260; Clancy on Husband and Wife, 354.

4. It is incumbent on the defendant to prove the alleged mistake in the bill of sale for Joe and his family; and the evidence on the point fails to establish it. Huckabee's declaration to Isaac Croom was, "that he intended to take the bill of sale in his own name, to give his wife the refusal of the purchase"; but there is no evidence that she refused to take them as an investment of her funds. Huckabee's dying declaration, as to the alleged mistake, was not addressed to his wife; nor can her silence, under the circumstances, be construed as an implied admission of its truth.—1 Green. Ev. § 197. The complainants' right to these slaves is fully sustained by the proof.—Adams on Equity, 215; Williams v. Maull, 20 Ala. 721.

S. F. HALE, and WM. M. BROOKS, *contra.*—1. As to the slaves which are admitted to have been received by Huckabee and wife, as the wife's share of her father's estate, under the trusts of his will, as well as those purchased by Huckabee with the proceeds of the sale of his wife's lands: The proof shows that Huckabee and wife, during his lifetime, lived together as man and wife; that the wife was supported and maintained by the husband; that two of the slaves were always kept by her in her employment, as house servants; and that the others were employed on the husband's plantation, with full knowledge on the part of the wife, and without objection by her. Upon this state of facts, the husband is not liable to account for the hire and profits received by him, nor is his estate accountable.—Clancy on Husband and Wife, 354; 2 Bright on Husband and Wife, 260-61; Hill on Trustees, 425.

2. Nor is the husband's estate liable for the hire and profits for the remainder of the year in which he died. The widow was then a *feme sole*, and this property was absolutely hers; and if she voluntarily chose to permit her slaves to remain on her husband's estate, of which she and her infant child were sole distributees, it must

be presumed to have been intended for the benefit of herself and child, and she cannot now be allowed to set up a claim against the estate for hire. Moreover, if the administrator retained these slaves, either wrongfully, or by virtue of any contract express or implied, he might be liable personally for their hire, but his intestate's estate certainly could not.—Jones v. Dawson, 19 Ala. 672; Shorter v. Urquhart, 28 Ala. 361.

3. As to the slaves Joe and his family: If these slaves were purchased with money belonging to the wife's separate estate, as the bill alleges, and the bill of sale for them taken to the husband as trustee; then the legal title to them vested in the wife, on the death of the husband, and her remedy at law for their recovery is adequate and complete.—Knight v. Bell, 22 Ala. 199. But the proof shows, as the answer avers, that these slaves were purchased by the husband on his own credit, and paid for by his administrator after his death. Admitting that the evidence shows an intention on the part of the husband that the wife might, if she chose, take them as a part of her separate estate; there is no proof of an election on her part so to take them, but, on the contrary, it is shown that the husband changed his intention before his death, notified her of the fact on his death-bed, and that she acquiesced in it. That the intended gift was revocable by the husband, at any time before his death, see Puryear v. Puryear, 12 Ala. 16; Williams v. Maull, 20 Ala. 721.

4. Nor can the complainants recover the $2,050, belonging to the wife's separate estate, which went into the hands of her husband as her trustee, and were not invested at the time of his death. For the recovery of this money the remedy at law is adequate and perfect.—Knight v. Bell, 22 Ala. 198. The claim is barred, moreover, by the statute of non-claim.—Pharis v. Leachman, 20 Ala. 683; 4 Mason, 29; 3 Yerger, 11; 11 Pick. 181. If the bar is not complete under the Code, it is fully made out under the act of 1850, which is not repealed by the Code so far as it applies to such cases as this.—Rawls v. Kennedy, 23 Ala. 240.

WALKER, J.—If the plea of the statute of *non-claim* is maintainable, the consideration of the most of the other questions in this case would be supererogatory. We therefore proceed at once to declare the law, as we understand it, in reference to that plea.

The allegation of the facts necessary to make the statutory bar applicable to the cause of action, is indispensable to the sufficiency of the plea.—2 Daniel's Ch. Pl. & Pr. 687; Maury's Adm'r v. Mason, 8 Por. 811; Goodman v. McGehee, 15 Ala. 233; Grady v. Robinson, 28 Ala. 289. If the presentation of the claim, within the time prescribed by law, is not negatived, a necessary averment is omitted, and the defense is not made out in the pleading; for, where a right depends upon a negative, its allegation is necessary, even though proof of it would not be required. Crafts v. Dexter, 8 Ala. 767; Carpenter v. Devon, 6 Ala. 718; McCauley v. The State, 26 Ala. 135; Walker v. Palmer, 24 Ala. 358; Carroll v. Malone, 28 Ala. 521.

The defendant's administration commenced, and notice requiring the presentation of claims was given, in October, 1851; and on the 17th January, 1853, when the Code became of force, eighteen months from the grant of administration had not expired. From the 17th January, 1853, to the commencement of this suit, on the 17th July, 1854, there was a period of precisely eighteen calendar months. Code, §§ 6 and 13.

By the 10th section of the Code, "all acts of a public nature, designed to operate on all the people of the State," not embraced in that body of laws, are expressly repealed. The act of the 5th February, 1850, (Pamphlet Acts '49–50, page 68,) which is the statute of *non-claim* next preceding the Code in date, differs from the section of the Code on the same subject, in this, that the former requires a presentation within eighteen months from the administrator's notice, and the latter (§ 1883) within eighteen months after the grant of administration. The act of 1850 is, therefore, not embraced in the Code; and we must either hold that it is repealed, or, *pro hac vice*, abrogate the clause of the 10th section of the Code above quoted.

The case of Rawls v. Kennedy, 23 Ala. 240, decides,

that where the period prescribed in a statute of limitations was changed by a subsequent act, the time which had elapsed under the old law "was not effaced" by the new. But, in that case, it was decided, that the latter did not repeal the older statute; and the entire decision is an implied admission that the law would have been different, had the older statute been repealed.—See, also, the cases of Henry v. Thorp, 14 Ala. 103; Doe v. Haskins, 15 Ala. 619; Coxe v. Davis, 17 Ala. 714, which are corrected and overruled, as to some of their *dicta*, in Rawls v. Kennedy, *supra*. The statute of *non-claim*, like the statute of limitations, is subject to repeal or modification by the legislature; and, when repealed, cannot be effectual to complete a bar incomplete at the time of its repeal. Jones v. Jones, 18 Ala. 248. It is, therefore, inadmissible to extend the operation of the act of 1850, beyond the date of its repeal by the Code, on the 17th January, 1853, so as to perfect a bar by the addition of subsequent time to that which had elapsed before the repeal. It follows, that, as eighteen months had not expired before the repeal of the act of 1850, there is no bar under that statute; and, under it, the eighteen months next after the commencement of the administration, or the giving of the administrator's notice, cannot be reckoned as the time within which the presentation of the claim was required to be made.

In McHenry v. Wells, 28 Ala. 451, it is decided, that the statue of non-claim contained in the Code has no retroactive operation, and that the time prior to its becoming the law cannot be computed in making out a bar under its provisions. Then, under the Code, a bar could not be effected in less than eighteen months after it went into force; and the eighteen months next after the commencement of defendant's administration, or the giving of notice in October, 1851, was not the period, a failure to make presentation within which would, under the Code, effect a bar to the complainants' cause of action.

We thus attain the conclusion, that neither by virtue of the act of 1850, nor by virtue of the Code, did an

omission to present the claim sued on to the defendant, within eighteen months after the grant of letters of administration, or the giving of notice by the administrator, have the effect to bar the complainants' cause of action, or any part of it.

The answer only negatives the presentation of the claim within eighteen months after the grant of letters of administration, and after giving notice by the administrator; and we must decide, in accordance with the principles above laid down, that the defense is not made out in the pleading of the defendant.

It will not profit the defendant to concede that the eighteen months, making the period contemplated in the statute of *non-claim*, intervened between the day on which the Code became the law, and that on which this suit was commenced; as to which, see Code, §§ 1883, 13; and Owen v. Slatter, 26 Ala. 547. The presentation within that period is not negatived by the plea. It is averred in the answer, that neither of the complainants had ever applied to and requested the defendant "to render unto them an account," &c. This is not sufficient; the complainants may have omitted to call upon him to render an account, and yet may have presented their claim to him. Indeed, we suppose as a matter of fact the claim was presented before the commencement of the suit, and it is probable an admission of that fact could be inferred from the answer.

The answer avers, that the claim of Mrs. Andrews to the slaves Joe and his wife and two sons, was never in any wise made known to the defendant, until an amended bill was filed. So far as these slaves are concerned, the object of the bill is a recovery of the specific property. To such a cause of action the statute of limitations has no application, as is decided in Locke v. Palmer, 26 Ala. 312. So that the averment of the non-presentation of that part of the cause of action avails nothing.

The objects of this suit are, to recover the income from personal property, consisting of slaves, alleged to have been the separate estate of Mrs. Andrews; the hire of slaves purchased for Mrs. Andrews, by her deceased

husband, with funds derived from the sale of land in which she had a separate estate; four slaves, alleged to have been bought by the deceased husband of Mrs. Andrews, with money arising from the sale of the above named land, or, if the slaves are not recovered, a balance of the purchase-money of the land not invested; and, lastly, money (and interest on it) belonging to the separate estate of Mrs. Andrews, and received by her deceased husband in his lifetime.

It is contended, that a portion of the slaves belonging to Mrs. Andrews were received under the will of her grandmother, which did not by its terms create a separate estate; that her separate estate in those slaves results from the statute; and that, therefore, the husband would be entitled to, and his administrator could not be made responsible for, the income from those slaves. On the other hand, it is contended for the complainants, that all the property was derived under the will of Mrs. Andrews' father, which by its terms created a separate estate. We do not go into the question thus mooted between the parties, because it may be conceded to the complainants, without changing the result, that the entire estate came by the will of her father, which created a separate estate.

Mrs. Andrews and her former husband lived together as husband and wife, and enjoyed a common support; the property of the wife and husband was mingled together; and the husband received the income from the wife's separate property, with her knowledge, and without objection upon her part. For the income of the separate estate received under such circumstances, the husband was not accountable to the wife, as was settled in the case of Roper v. Roper, at the last term. See, also, Weems v. Bryan and Wife, 21 Ala. 302; S. C., 25 Ala. 195.

The law constitutes the husband the trustee of the wife's separate estate; but the trust is executed and completed at the death of the husband; and, in that contingency, the legal, as well as the equitable title, vests in her.—Powell v. Glenn, 21 Ala. 458; Comby v.

McMichael, 19 Ala. 747; Bryan v. Weems, at the last term. Upon the death of the husband, the legal and equitable title to the wife's separate estate, the title of which was conveyed directly to her, unite in her, and she may maintain or defend an action at law for the recovery of the property or its hire. In Knight v. Bell, 22 Ala. 198, this court uses the following language, in reference to the right of a widow to defend an action at law by the representative of her deceased husband, for the recovery of slaves in which she had a separate estate: "Waiving still the discussion of the question, as to where the legal title is, or what becomes of it during the life of the husband, no doubt is entertained, that, on his death, a full legal title exists in the wife. As long, then, as her husband lived, Mrs. Knight had no title under the will of her father, upon which she could either prosecute or defend, at law, under her own name. That right, and that duty, were cast by law upon her trustee. But, when her husband died, and she became again a *feme sole*, the legal title, and the beneficial interest, became operative together in her at once, and she was fully competent both to prosecute and defend, at law, in respect to the slaves in question."—Puryear v. Puryear, 16 Ala. 487; 12 Ala. 13; 14 Ala. 121; Jenkins v. McConico, 26 Ala. 241. Mrs. Andrews' interest in the slaves of her separate estate becoming legal at the death of her husband, her remedy to recover the slaves, or damages for their detention after that event, is at law, and not in chancery.

We think that a different rule must prevail, in reference to the slaves alleged to have been bought with the proceeds of the sale of complainant's land, the title to which was taken in the name of Mrs. A.'s former husband. Chief-Justice Dargan said, in Comby v. McMichael, *supra*, that the courts would not cut down the title of a trustee to a life estate, or other less interest, in opposition to the language of the deed, merely because an estate in fee was unnecessary to the completion of the trust. But, where the instrument, by which the trusts are created, clearly contemplates that the title of the trustee must cease upon the performance of the trust, there the legal title must

determine on the performance of the trust. The bills of sale to the property bought with the proceeds of the sale of the land, are not found in the record; but, from the statement of their contents in the pleading it appears, that the title to the slaves was in general terms vested in George F. Huckabee, as trustee for Mrs. Andrews, and it does not appear that the bills of sale show that the slaves were bought with funds of the separate estate. The legal effect of the instrument would be, to create a legal title which, from any thing apparent in the bill of sale, would not cease upon the death of the trustee; and it would not be permissible, in a court of law, to vary that legal effect by parol evidence. It follows, that the law which excludes Mrs. Andrews from a recovery for the hire, after the death of her husband, of the other slaves belonging to the separate estate, does not apply to those slaves purchased with the proceeds of the sale of her land, and to which her deceased husband took title in his own name as her trustee.

There are four of the negroes, which the complainant has not received, and which she claims as having been purchased with the purchase-money of her land, and seeks specifically to recover. This claim is resisted by the defendant, and it becomes necessary for us to determine the controversy by reference to the pleadings and evidence. The bill avers, and the answer admits, that George F. Huckabee, the first husband of Mrs. Andrews, sold a tract of land, in which she had a separate estate created by her father's will, for five thousand and two hundred dollars, and received the money. The bill also avers, that this money was invested by George F. Huckabee in slaves for his wife, the title to which he took in his own name as trustee for her. Among these slaves were the four above named, Joe and his wife and two sons, which were bought for Mrs. Andrews, but are detained by the defendant. The answer admits, that three thousand four hundred dollars of the purchase-money of the land was invested in slaves; and avers that those slaves for which titles were taken as alleged in the bill were delivered to the complainant about the first of January, 1852, but

that Joe and his family were bought by George F. Huckabee for himself, and that he gave his note for about three thousand three hundred dollars for them, which his representative since his death has paid off out of his estate. The title to these slaves, the answer says, was taken in the name of George F. Huckabee as trustee, through mistake; and that it was so understood between him and his wife, who declined a proposition that she should take the slaves as an investment of her separate estate. The material points of conflict between the bill and answer are, as to the investment of the trust funds in the slaves Joe and his family, and as to the intention with which they were purchased, and the title taken in the name of the husband as trustee.

From a thorough examination and careful consideration of the testimony, endeavoring to reconcile its apparent inconsistencies, we attain the following conclusions: that the negroes Joe and his family were bought, not with the wife's funds, but with the note of George F. Huckabee and his surety; that George F. Huckabee, doubting whether the slaves would be desirable to his wife, took the title in his name as trustee by mistake, and bought them for himself, intending, however, to permit his wife to take them, if she chose to do so, and to protect himself out of the separate estate against the note for the purchase-money; that his death so quickly followed the purchase of the slaves, that the wife probably never had an opportunity to make her choice to take or not to take the negroes; that during the brief interim between the purchase of the slaves and Huckabee's death, when the election of the wife had not been made, the slaves were spoken of with the want of precision characteristic of unguarded social intercourse, as having been bought for the wife; and that Huckabee, in the last hours of his life, preferred that the title should be vested in himself, rather than that slaves of doubtful adaptedness to his wife's purposes should be imposed upon her, or, it may be, rather than that she should have the slaves without an arrangement of the deficiency of the separate estate in his hands to pay the purchase-money.

From these deductions from the testimony, we conclude, that the complainant has no title to the slaves Joe and his family. Her title cannot be maintained upon the bill of sale, because it was taken by mistake to her husband as her trustee; it cannot be maintained upon the fact that her separate estate was invested, because that ground is negatived by the evidence; and it cannot be maintained upon the fact established in the case, that it was the intention of her husband to permit her to take them if she chose, because it does not appear that such intention was ever by him communicated to her, and no right can result from the mere uncommunicated and unexecuted intention of the mind.

We have already decided that, upon the death of the husband, the legal title to the property, of which he was by law constituted the trustee, vested in the wife, and she had a right to sue, at law, in reference to such property or its hire; but the termination of the trust does not destroy the liability, in equity, for the trust money which went into the husband's hands. There was an equitable liability of the husband to account with the wife for the money received by him, which descended upon his representative; and this equitable debt, like any other, must bear interest against the administrator. In the case of Puryear v. Puryear, 12 Ala. 13, it was decided, that the wife could defend, at law, an action for money received by her under circumstances construed by the court to constitute a gift from the husband; but it was intimated that the rule would probably have been different, had the wife been compelled to sue the personal representative, as for a debt due from her husband.

We entertain no doubt, that the complainant, Mrs. Andrews, is entitled to recover in this suit the two hundred dollars belonging to the *corpus* of the separate estate, and interest on it from the death of George F. Huckabee. She must also recover the eighteen hundred dollars of the proceeds of the sale of the land which was not invested in slaves. The reason why the husband is not accountable, under certain circumstances, for the

income during his life of the wife's separate estate, is, that the wife's consent that he should have it is implied. 2 Bright on Husband and Wife, 259; Roper v. Roper, *supra*. No such consent can be implied as to this sum of eighteen hundred dollars, because the wife's consent to the sale of the land, from which it was derived, was given upon the express condition, that the money should be invested in slaves. But, inasmuch as this money was received on the express condition that it should be invested in slaves, and the evidence does not show that Huckabee had an opportunity, during the brief interval between the reception of the money and his death, to have made a safe and discreet investment of it, his omission to make such investment will not, of itself, authorize a charge of interest. Rapalgi v. Hall, 1 Sanford's Ch. R. 399. It appears, however, that he loaned out one thousand dollars of this money; thus diverting it from its destined investment. Therefore, upon this one thousand dollars, interest must be charged from the date of the loan, until the death of defendant's intestate; and from the death of defendant's intestate interest must be charged upon the entire eighteen hundred dollars.

The judgment of the court below is reversed, and this court now here renders the decree which the court below ought to have rendered, as follows : It is ordered, adjudged, and decreed, that the complainant, Harriet F. Andrews, recover from the defendant, Robert D. Huckabee, as administrator of the estate of George F. Huckabee, deceased, the sum of two hundred and fifty dollars, and interest on the same from the death of the said George F. Huckabee; and also, the sum of eighteen hundred dollars, with interest on one thousand dollars of that sum, from the 1st March, 1851,[1] to the death of said George F. Huckabee, and interest on the entire eighteen hundred dollars, from the death of said George F. Huckabee; and also, reasonable hire for the slaves (Sam, Chaney, Louisa, and Mary Barnes) bought with the purchase-money of complainant's land, from the death of said George F. Huckabee, until they were delivered to the complainant; and that the registrar in chancery for the chancery court

at Eutaw in Greene county ascertain and report the amount of said hire, and take and state an account, wherein he shall charge the defendant with the hire, sums of money and interest above named, and that he report to the next term of the said chancery court; and the question of costs in the court below is reserved until the coming in of the report, to be determined by the court below. The cause is remanded for further proceedings in pursuance to the foregoing opinion and decree, and the costs of this court are adjudged against the appellee.