LEVERING *et al.*, *Plaintiffs in Error*, v. SCHNELL.

1. **Fraud**: JOINT ACTION FOR RELIEF. Where parties having distinct interests have been made the victims of a fraud, the fact that the fraud was contrived against them all and the same means were used to deceive them all, will not entitle them to maintain a joint action for relief, unless it was through a joint transaction that the fraud was accomplished.

2. ———— : REMEDY, AT LAW AND NOT IN EQUITY. The petition in this case examined and held to state a case for relief by an action at law for deceit, and not in equity.

*Error to St. Louis Court of Appeals.*—Reported in 9 Mo. App. 583.

AFFIRMED.

*E. McGinnis* for plaintiffs in error.

*Henry Hitchcock* for defendant in error.

PHILIPS, C.—This is a proceeding in equity. The petition discloses the following state of facts: Frederick W. Meyer died and his widow, Minna Meyer, was, by the St. Louis probate court, appointed his administratrix. E. Levering & Co., a partnership firm, had allowed against said estate a claim for $4,242.50. Levering, Walker & Co., another partnership firm, had allowed against the estate a claim for $4,229.50, both placed in the fifth class. John C. W. Schnell is the brother of the administratrix, and John Schnell is her father. The petition charges that the administratrix and the Schnells, knowing the estate to be solvent, entered into a conspiracy to falsely represent to creditors that the estate would not pay fifth class claims in full, so as to deceive creditors and buy their claims at less than their value, and secretly use the money of the estate therefor; that in pursuance of this scheme, they represented to plaintiffs, on September 10th, 1875, that the estate then had no money on hand, when, in fact, as defendants then well knew,

it then had on hand not less than $5,200; that the greater portion of the debts (about $12,000) due the estate could not be collected, when, in fact, as defendants then well knew, the greater portion of the debts had then been collected; that, because of said facts, the estate would pay on-fifth class claims only sixty cents on the dollar, and, in no event, more than seventy-five cents, whereas defendants then knew that all claims were worth their face value. Plaintiffs believed these said false representations, and were thereby induced, on September 10th, 1875, to sell their claims, amounting to $8,850—jointly for $5,100—to said John Schnell, as they believed at the time, but in fact the purchase was made by the administratrix, secretly, in the name of said John Schnell, and the $5,100, used in making the purchase, was the money of the estate, and not that of the Schnells, as plaintiffs were made to believe.

That after plaintiffs were thus defrauded, the Schnells and the administratrix carried on their scheme of plundering the estate by bringing forward the Levering claims, in the name of said John Schnell as ostensible owner, and paying him the face of the claims out of the funds of the estate, and the illicit profit thus made was divided between the administratrix and the said Schnells; that they also procured an order from the court to sell the personalty at private sale, and falsely reported to the court a much less sum than was actually received; that they speculated with the funds of the estate for their private gain, and made profits which they concealed from the court and creditors; that they procured real estate of the estate to be sold at private sale, and John Schnell was ostensibly the purchaser, but the administratrix was secretly the real purchaser, and at less than half its value; and, she having since died, said Schnells are now, as her devisees, the owners of said real estate.

That various false and fraudulent statements were made in the annual and final settlements, and the estate thereby made to appear to be partly insolvent, when it was

wholly solvent; that all the matters of fraud and deceit were concealed by the administratrix and said Schnells from the court and the creditors; and the administration was closed and the administratrix discharged in July, 1877 ; that plaintiffs first learned in the summer of 1878 of the fraud that had been practiced on them and the estate; that all other demands against said estate, except those of plaintiffs, and one of $147.57 in the sixth class, have been paid in full. The owners of said sixth class claim (Wm. Schotten & Co.) are made defendants.

The relief asked by plaintiffs is, that the balance of their claims be adjudged to be paid, and that defendants, Schnells, be charged as trustees for the money received by themselves and administratrix from the estate on the Levering claims; for the money from sale of personal property and not accounted for ; for profits made in speculating, and for said real estate now held by said Schnells, all as unadministered assets fraudulently acquired by them, and, therefore, charged with a trust for the benefit of the creditors suffering from the fraud.

To this petition John Schnell demurred, alleging that no cause of action was stated, and that several causes of action were improperly united. Defendant John C. W. Schnell being a non-resident, has not yet been served with process. The court sustained the demurrer. Plaintiffs declining to plead further, final judgment was given for defendants, and the case was taken to the court of appeals, which affirmed the judgment of the circuit court. The case is now here on writ of error.

I am unable to perceive the necessity or propriety of the two firms joining in this action. They constitute separate partnerships, their claims are distinct, and there is no such community of interest between them as to require a joint action  True, the petition alleges a combination between the Schnells to defraud the creditors of the fifth class, and the same false representations were made to the plaintiffs to induce their acceptance

1. FRAUD: joint action for relief.

of the offered sum for their claims. But there was no joint proposition made them. The acceptance by one was by no joint arrangement made to depend upon the acceptance of the other. Nothing is alleged to show that the action of one was influenced by that of the other. No unity in time nor transaction. Each firm in the matter preserved its individuality, and had its separate cause of action, independent of the other, and might proceed without the consent or presence of the other. Their injuries were distinct. The practice act certainly gives no countenance to such joinder of parties plaintiff. "All persons having an interest in the subject of the action," applies of course to a community of interest in the one action, and not to a case where A has his own cause of action, and B has no right to or interest in A's claim, but has his own independent claim. Because they have both been separately defrauded by C and seek relief against him, this statute does not authorize them to join in one action. It is not the case of several creditors joining in a creditors' bill to reach the funds of a debtor held in constructive trust as a common fund for all the creditors. The distinction is too palpable to demand amplification. In equity practice parties having a common interest may unite where the subject matter of litigation arises out of the same transaction, but not separate transactions: Story Eq. Plead., (9 Ed.) § 279. In *Comby v. McMicheal*, 19 Ala. 752, it is held that parties having joint interests in property and equities among themselves, cannot join in a bill in equity to redress an injury done to their joint legal estate. Why then may they join in a bill to redress an injury done to their separate legal estate?

Aside, however, from the question of misjoinder of actions, can this proceeding in equity be maintained? It 2. ——: remedy, at is a familiar principle that where the party law and not in has an adequate and complete remedy at equity. law, equity jurisdiction cannot be invoked. Stripped of its cumbrous statement and surplus phrasing, and reduced *in puris naturalibus*, what is this case but that A and B,

contriving to obtain the goods of C and D at less than their value, accomplished their fraudulent design by deceit and falsehood? The common law action on the case for deceit is especially applicable. In it all the essential facts could be developed. What is the injury to plaintiffs complained of? Simply that by reason of defendants' deceit and falsehood they were induced to part with $8,850 worth of property for $5,100. This, as to them, is the whole gravamen of their complaint. The recovery of $3,750, or $1,875 each, and interest, from the defendants, is all they are entitled to. If the remedy at law is adequate to this end, the remedy is effectual and complete. There remains then nothing to call into action the extraordinary functions of a court of chancery. *Thompson v. Manly*, 16 Ga. 440, 442; *Echols v. Hammond*, 30 Miss. 177; *Moore v. Wingate*, 53 Mo. 411, 412; *Coughron v. Swift*, 18 Ill. 414; *Janney v. Spedden*, 38 Mo. 402; *Norwich v. Storey*, 17 Conn. 364.

The allegations of the petition that the administratrix speculated in the funds of the estate, improvidently administered it, and managed to appropriate by unauthorized sales the real estate, are wholly immaterial. This is not an action for waste, nor for marshalling assets. The petition distinctly avers that there were sufficient assets on hand to pay the claims in full, and that as a matter of fact the administratrix did pay them out of the moneys of the estate to the fraudulent assignees. So had plaintiffs not assigned their claims they could have enforced payment from the administratrix as such. Through the fraud of defendants they lost so much money by making the assignment, and for that injury, if any, they had a complete remedy at law.

The demurrer was well taken. The judgment of the court of appeals and of the circuit court are, therefore, affirmed. MARTIN, C., concurs; WINSLOW, C., absent.